PLATENIUS AS AD. VS. THE STATE.

The act of the 7th December, 1854, entitled "An act further to regulate the manner of
bringing suits against the State," is constitutional and within the competent powers
of the Legislature.

*Writ of Error to the Circuit Court of Pulaski County.*

The Hon. JOHN J. CLENDENIN, Circuit Judge.

PIKE, for the plaintiff.

S. H. HEMPSTEAD, for the defendant.

Mr. Justice SCOTT delivered the opinion of the Court.

This was an action of covenant instituted by the plaintiff in
error, against the defendant, under the provisions of the statute
put in force, by the proclamation of the Governor, on the 20th
of March, A. D. 1839. *Digest, chap. 157, page 961.*

The declaration was filed in the Pulaski Circuit Court, on the
21st day of November, A. D. 1854, and a writ of summons was is-
sued the same day returnable to the next succeeding June term,
which was regularly served upon the Auditor of Public Ac-
counts.

The following is a copy of the declaration: (omitting four hun-
dred and ninety-nine counts like that copied, except that each is
on a different and distinct bond for the same amount, dates, &c.)

"IN THE PULASKI CIRCUIT COURT, ⎱
To the December Term, A. D. 1854. ⎰

William A. Platenius as, and in his capacity of administrator,
*ad colligendum,* of all and singular the goods and chattels, rights

and credits, which were of James Holford, deceased, who died testate, by attorney, complains of the State of Arkansas of a plea of covenant broken.

For that whereas, heretofore, *to wit:* on the 1st day of January, A. D. 1840, at Little Rock, in said State of Arkansas, under and by virtue of the act of the General Assembly of said State, entitled: "An act to establish the Real Estate Bank of the State of Arkansas," approved the 26th day of October, A. D. 1836, and of the other act of the said General Assembly, entitled: "An act to increase the rate of interest on the bonds of the State, issued to the Real Estate Bank of the State of Arkansas," approved the 19th day of December, A. D. 1837: and of the other act of said General Assembly, entitled: "An act to authorize the Stockholders of the Real Estate Bank of the State of Arkansas to establish a branch in the western part of this State," approved the 24th day of February, A. D. 1838, and under the fifth section of said last mentioned act, and the second section of said second mentioned act, and the tenth section of said first mentioned act, for the ends and purpose in said last mentioned act specified, *to wit:* to enable said bank to raise the residue of the capital provided for by said first mentioned act, and put said branch in the western part of this State, in operation, the said State of Arkansas made and executed, and to the said Real Estate Bank of the State of Arkansas, delivered her certain bond and writing obligatory, dated the said 1st day of January, A. D. 1840, sealed with the great seal of said State, then thereto caused to be affixed by his Excellency, James S. Conway, then Governor of said State, signed by said Governor, and countersigned by John Hutt, then the Treasurer of said State, and which, with the endorsements thereon, hereinafter mentioned, is now here shown to the court, and the caption whereof is as follows, that is to say:

UNITED STATES OF AMERICA, }
STATE OF ARKANSAS.                          }

*One thousand dollars, Arkansas State Bond; £ stg.* 225—*No.*

1: *C. Frs.* 5600: *Real Estate Bank of the State of Arkansas: Under an act of the General Assembly of the State of Arkansas, entitled: "An act to establish the Real Estate Bank of the State of Arkansas, approved October 26th, 1836:" and an act supplementary thereto, entitled: "An act to increase the rate of interest on the bonds of the State, issued to the Real Estate Bank of the State of Arkansas," approved the 19th December, 1837:" and an act entitled: "An act to authorize the Stockholders of the Real Estate Bank of the State of Arkansas to establish a branch in the western part of this State," approved February 24th, 1838."*

To the payment of which bond by said last mentioned act of Assembly, the faith and credit of said State were irrevocably pledged: and thereby the said State of Arkansas then and there acknowledged herself to be indebted to said Real Estate Bank of the State of Arkansas, in the sum of one thousand dollars: and thereby covenanted and agreed with said Real Estate Bank of the State of Arkansas, that she would pay the said sum of one thousand dollars, in current money of the United States, to the President, Directors and Company of the said Real Estate Bank, on the 26th day of October, in the year of Our Lord one thousand eight hundred and sixty-one, and also, that she would pay half yearly, on the first day of January, and the first day of July, in each year, interest on said last mentioned sum of one thousand dollars, at the rate of six per cent. per annum, at the place to be named in the endorsement upon said writing obligatory, until the payment of said principal sum; which said writing obligatory, being in law payable to said Real Estate Bank of the State of Arkansas, and said covenant therein contained, being made with said bank, by its description of "The President, Directors and Company of said Bank," the said Real Estate Bank, afterwards, *to wit:* on the 1st day of January, A. D. 1840, by its endorsement on said writing obligatory, then made in the first person, by William E. Woodruff, the President, and Carey

A. Harris, the Cashier of said bank, for value received, assigned, transferred and endorsed the said writing obligatory, under and by virtue of the powers, by the 10th section of said act of Assembly establishing said Real Estate Bank, in the said President and Cashier vested, to the said James Holford, who was then living; and thereby directed the said sum of money, and the instalments of interest therein mentioned, to be paid to him or his order; and therein, they did, by virtue of the act of Assembly last aforesaid, and the other acts above mentioned, and the authority to them thereby given, fix the place at which said principal and interest should be paid, to be in the city of London, (which was, and is in the Kingdom of Great Britain, beyond seas,) at the counting house of Messrs. Frederick, Huth & Co., in said city of London, and so made the said principal and interest there payable to the said James Holford, at the rate of four shillings sixpence sterling per dollar, or four dollars and forty-four cents per pound sterling; the said interest to be paid on presentation and delivery of certain dividend warrants (or coupons) thereto annexed by said bank, being memoranda of the amount and time of payment of each semi-annual instalment of interest: and said principal to be paid on presentation and delivery of said bond, on the day when it should become due, and then there bound said State to the payment of said interest and principal, and then there delivered said last mentioned bond, so endorsed to said assignee, James Holford, who then thereby became the endorsee and assignee thereof, and the plaintiff is now the holder and owner of the same, as such administrator as aforesaid.

And the said plaintiff in fact saith that the said State of Arkansas hath not paid at said banking house of said Frederick Huth & Co., in said city of London, or elsewhere, the said several instalments of interest, at the rate of six per cent. per annum, which have become due and payable since the making of said writing obligatory, upon said last mentioned sum of one thousand dollars, or two hundred and twenty-five pounds sterling, on

36c

the 1st day of July, in the year 1840, and upon the 1st day of January and the 1st of July, in each and every year thereafter, up to, and including the present year, 1854, *to wit:* the sum of thirty dollars, or six pounds, fifteen shillings sterling on each of said days, to the said James Holford, or to any other holder of said bond, or person authorized to receive the same, either upon those days, or at any other time or times whatsoever, according to the form and effect of said writing obligatory and covenant, and said endorsement thereof, or either of said sums, or any part of either, although often requested so to do; but the said State, the said several sums of thirty dollars, or six pounds fifteen shillings sterling each, unto the said James Holford, in his life-time, or to the plaintiff since his death, or to any other holder of said bond, or person authorized to receive the same, at the end of the said respective terms, or ever as yet, in whole or in part, to pay hath altogether omitted, neglected and refused; nor hath she ever made any provision for the payment of any of said instalments, or ever had or placed any money at said place of payment, to pay and meet any of said instalments, nor hath any other person, nor said bank done it for her; nor ever been there ready to pay the same, so that it hath always been useless there to present any of said dividend warrants for payment, or to demand payment there, of any of said instalments of interest, against the form and effect of said covenant and writing obligatory, and of the said endorsement thereof: and so the said plaintiff saith that the said State, although often requested, hath not kept her said covenant, so by her made as aforesaid, and hath broken the same, and to keep the same with the said James Holford, and with the plaintiff as such administrator, hath hitherto wholly refused, and still doth refuse; nor hath paid the difference of exchange, or any part thereof, on any one or more of said instalments of interest, between Little Rock, and the city of London, in favor of London, as it hath since the making of said writing obligatory, hitherto ever been:" (*Note:* Here follow 499 other counts in the declaration, which are omitted.)

OF THE STATE OF ARKANSAS. 523

TERM, 1856.]                    Platenius as ad. vs. The State.

" By means of which said several breaches of said several cov-
enants of said State of Arkansas, in the several counts of this
declaration herein above alleged and assigned, the said plaintiff
saith that he, as such administrator as aforesaid, is injured and
hath sustained damage to the sum of one million of dollars; and
therefore, in his capacity of such administrator as aforesaid, he
sues; and he here brings into court an authenticated copy of the
letters of administration, *ad colligendum*, of all and singular the
goods and chattels, rights and credits, which were of the said
James Holford at the time of his death, and which letters were,
after the death of the said James Holford, *to wit:* on the 20th
day of May, A. D. 1854, granted to the plaintiff by the Hon.
ALEXANDER W. BRADFORD, Surrogate, with probate jurisdiction,
of the county of New York, in the State of New York, one of
the United States of America, in due form of law, and give suffi-
cient evidence to the said court of the said grant of administra-
tion to the said plaintiff."

At the return term, *to wit:* the 25th of June, 1855, the Attor-
ney General, with whom was the special attorney retained by
the State, filed the following motion, *to wit:*

"The said State, by attorney, moves the court to require the
plaintiff to file the bonds mentioned and referred to in the de-
claration, according to act of Assembly of the 7th December,
1854, and if the same are not filed, that the suit be dismissed."

The court taking time to advise until the 9th of July follow-
ing, on that day ruled that the plaintiff should produce and file
the bonds in court, which the plaintiff, as is shown by the bill of
exceptions, in open court declined to do, whereupon, the court
immediately sustained the motion, and dismissed the cause; the
plaintiff thereupon excepting, and having his bill of exceptions
sealed and made a part of the recod, afterwards brought his cause
into this court by writ of error.

Here, he insists upon the single point, that the act of the Le-
gislature, under the provisions of which the Circuit Court dis-

missed his suit, was unconstitutional, and ought to have been disregarded.

It was provided by the act under which these proceedings were commenced, that such suits, when commenced, be conducted to final judgment, in the same manner as actions by and against individuals. And when judgment should be rendered, it should be the duty of the Auditor of Public Accounts, to transmit a copy of it to the General Assembly, which should make an appropriation for its satisfaction. That appeals and writs of error should be allowed, and that nothing in the act should preclude any claimant from making application to the General Assembly for the satisfaction of his claim, in the first instance, without any resort to such proceedings.

It is provided by the act under which these proceedings were dismissed, which is entitled: "An act further to regulate the manner of bringing suits against the State," (act approved by the Governor, December 7th, 1856. *Pamph. Acts of* 1855, *p.* 17.)

SEC. 1. "That in every case in which suits, or any proceeding has been instituted, to enforce the collection of any bond or bonds issued by the State of Arkansas, or the interest due, or which shall be due on any such bond or bonds, before any judgment or decree shall be rendered in any court, such original bond or bonds, as the case may be, shall be produced and filed in the office of the clerk of the court, and shall not be withdrawn until the final determination of such suit or proceedings, and the full payment of such bond or bonds, and all interest thereon, and the same may then be withdrawn, canceled and filed with the State Treasurer by order of the court, but not otherwise."

SEC. 2. "That in every case in which any suit or proceeding has been, or shall hereafter be instituted, upon any bond or bonds of this State, or for interest which may or shall be due thereon, the court, at the first term after the commencement of suit or suits, proceeding or proceedings, whether the same be at law or equity, and whether the same be by an original or cross-

bill, shall require that the original ·bond or bonds be forthwith produced and filed, as required by the first section of this act, and in case such original bond or bonds be not forthwith produced and filed in the manner, and to remain so filed as aforesaid, it shall be the duty of the court, on the same day, to dismiss such suit, proceeding ·or cross-bill." .

SEC. 3. "That all laws and parts of laws contrary to this act, be, and the same are hereby repealed, and this act shall take effect and be in force from and after its passage."

It is argued that this latter act impairs the obligation of the contract proceeded upon in this cause.

Judge STORY says, in his commentaries on the Constitution of the United States, (*vol.* 2, *Book* 3, *sec* 1380, *p.* 232): "It seems agreed, that, when the obligation of contracts is spoken of in the Constitution, we are to understand, not the mere moral, but the legal obligation of the contracts. The moral obligation of contracts is, so far as human society is concerned, of an imperfect kind, which the parties are left free to obey or not, as they please. It is addressed to the conscience of the parties, under the solemn admonitions of accountability to the Supreme Being. No human law given, can either impair or reach it. The Constitution has not in contemplation any such obligations, but such only as might be impaired by a State, if not prohibited. It is the civil obligation of contracts which it is designed to reach; that is, the obligation which is recognized by, and results from the law of the State in which it is made."

In the next succeeding section, he says: "Nay, there may exist (abstractly speaking,) a perfect obligation, in contracts where there is no known and adequate means to enforce them. As, for instance, between independent nations, when their relative strength and power preclude the possibility, on the side of the weaker party, of enforcing them. So, in the same government, where a contract is made by a State with one of its own citizens, which yet its laws do not permit to be enforced by any suit or action. In this predicament are the United States, who

are not suable on any contracts made by themselves: but no one doubts that these are still obligatory on the United States. Yet their obligation is not recognized by any positive municipal law, in a great variety of cases. It depends, altogether, upon principles of public or universal law. Still, in these cases, there is a right in the one party to have the contract performed, and a duty on the other side to perform it. But, generally speaking, when we speak of the obligation of a contract, we include in the idea, some known means acknowledged by the municipal law to enforce it."

So, in section 1385, (*p.* 236,) he says: "Although there is a distinction between the obligation of a contract, and a remedy upon it, yet, if there are certain remedies existing at the time when it is made, all of which are afterwards wholly extinguished by new laws, so that there remain no means of enforcing its obligations and no redress: such an abolition of all remedies, operating *in presenti*, is, also, an impairing of the obligation of such contract. But every change and modification of the remedy do not involve such a consequence. No one will doubt that the Legislature may vary the nature and extent of remedies; so, always, that some substantial remedy be in fact left. Nor can it be doubted that the Legislature may prescribe the terms and modes in which remedies may be pursued, and bar suits not brought within such periods, and not pursued in such modes. * * * * * And a State Legislature may discharge a party from imprisonment, upon a judgment in a civil case of contract, without infringing the Constitution: for this is but a modification of the remedy, and does not impair the obligation of the contract."

We have made these extracts as a more convenient mode, than citing the cases upon which they are based, and stating their substance, of presenting the principles of law, which, we think, govern the question we have to decide.

According to these principles, had the remedy in question been a perfect one for the broken contract, and had therefore

afforded adequate means, as by execution, for enforcing its pre-existing obligation, the objection taken could not have been maintained so long as a like substantive one remained to the party. And it was upon this foundation that the con-stitutionality of the act of our Legislature, exempting the debt-ors of the State Bank, from the process of garnishment from courts of law, was upheld by this court in the case of *Danley et al. vs. The State Bank*, 15 *Ark. Rep.* 16.

Much more, then, is the objection to be disallowed under like circumstances, when, as in the case at bar, the remedy in ques-tion was, in truth, but an imperfect one, precatory in its nature, and living but in entreaty; and, consequently, totally inadequate to enforce peremptorily the duty of performing the contract. And that the remedy in question was of this nature, and, that if it had been repealed, instead of having been modified, as it was, that another one, substantially as effective, would have remained, seems clear enough, when it is remembered that the proceedings in question were but a mode of application to the Legislature for the satisfaction of the claim; and that, without resorting to them at all, the same statute allowed direct application to that depart-ment of the government for the like purpose. The judgment of the court in the one case, ascertaining the fact of its indebted-ness, and its amount, as the finding of an accounting officer of the government might do in the other; when, as to both, the matter would come to a stop, unless the Legislature should think proper to satisfy the claim: the courts having no power to force satisfaction of their judgments against the State.

The remedy in question, at best, can scarcely be regarded as any means of legally enforcing the duty of performing the obli-gation of the contract proceeded on; and, therefore, although the plaintiff in error might be considered as having had a right to bring suit and obtain judgment in this way, and that the en-actment of the 9th of December, 1854, materially obstructed and impaired those rights, it cannot be doubted, in view of these principles, but that it was within the competent powers of the

Legislature so to obstruct and impair them: because, thereby, no means of enforcing the duty of performing the contract, recognized and enforced by law, was taken away, and necessarily, the obligation of the contract remained the same.

We think that the objection ought not to be allowed. The judgment of the Circuit Court will, therefore, be affirmed, with costs.