# *Ex Parte* State of Alabama.

## *Application for Mandamus.*

1. *State; laws authorizing suit against, confer mere privileges.* — Statutes permitting the State to be sued are mere matters of grace, conferring privileges, not rights, which it may withdraw at pleasure.

2. *Same; repeal of law authorizing, effect of, on pending suit.* — The repeal of the law authorizing suits against the State strips. a court, in which such a suit is pending, of all jurisdiction to proceed further in the cause.

3. *Section 16, Art. 1 of Constitution; not mandatory.* — Section 16 of Art. 1, of the Constitution which declares that " suits may be brought against the State in such courts as may be by law provided," is not to be construed as imposing a duty upon the legislature to pass laws authorizing such suits.

THIS was an application by the attorney general, on behalf of the State, for *mandamus* to compel the judge of the circuit court of Montgomery to strike from the docket a case therein pending, wherein one W. A. C. Jones was plaintiff, and State of Alabama defendant, on the ground that the law authorizing suits against the State had been repealed, — a like motion to strike the case from the docket having been overruled by the circuit court.

In his return to the rule *nisi* the circuit judge answered that the plaintiff, a citizen of the State, brought suit against it in said circuit court on the 14th of November, 1873, upon a contract alleged in the complaint to have been made by the State with him in 1871 ; that the attorney general and other counsel, employed to defend, appeared on behalf of the State, and the cause was continued by consent of parties to the December term, 1874, and was thus pending when the act of December 18, 1874, was passed ; that holding that this act had no application to Jones's suit, he overruled the motion of the attorney general to strike it from the docket. The attorney general now moved for a peremptory *mandamus.*[1]

JOHN W. A. SANFORD, Attorney General, with whom was R. M. WILLIAMSON, for the motion. — I. Alabama is a sovereign State, and the sovereign is not bound by general words

---

[1] The following is the act referred to : —

" AN ACT.

" To repeal sections 2534, 2536, 2571, and 3323 of the Revised Code of Alabama.

" SECTION 1. *Be it enacted by the General Assembly of Alabama,* That sections numbered two thousand five hundred and thirty-four (2534) ; two thousand five hundred and thirty-six (2536); two thousand five hundred and seventy-one (2571), and three thousand three hundred and twenty-three (3323), of the Revised Code of Alabama be and the same are hereby repealed.

" SECTION 2. *Be it further enacted,* That all laws and parts of laws in conflict with the provisions of this act or which make any provisions for bringing or conducting suits against this State, be and the same are hereby repealed.

" *Approved December* 18, 1874."

[Ex parte State.]

in a statute, but is, by express terms, or by necessary implication. *The United States* v. *Hewes*, Crabbe's Reps. 307 *et seq.* Consequently the general laws which provide remedies for the redress of wrongs or the enforcement of rights, do not authorize suits to be instituted against the State. Mulford's Nation, 129–130 ; Cooley Const. Limitations.

II. No sovereign can be sued without its consent. This must be clearly given. It is a grace or favor granted to the citizen, and is revokable at the will of the sovereign. *Beers* v. *Arkansas*, 20 How. 527 ; 20 Ib. 530. The privilege of bringing suits against the State, cannot be considered a vested right, or a contract ; and its revocation does not infringe any provision of the State, or federal Constitution. Cooley Const. Lim. pp. 362–383 ; *Sanders* v. *Ogden*, 12 Wheat. 332–357 ; *Ex parte Pollard*, 40 Ala. 77–92, and authorities cited.

III. Upon the consent of the sovereign to be sued depends entirely the jurisdiction of the court, and its withdrawal deprives the court of jurisdiction, even over the suits then pending. 1 Conn. 182 ; 8 Pet. 444–88 ; 9 How. 389 ; 2 Texas, 611 ; 7 Wall. 154 ; 7 Ib. 506 ; 3 Dall. 378 ; 2 Pet. 380 ; 2 Ib. 492–523 ; 5 Cranch. 281 ; 1 Binney, 601 ; 3 Ohio, 553–76 ; 1 Hill (N. Y.), 330 ; *Rex* v. *Justices*, *&c.* 3 Burr, 1456. The consent to be sued by her own citizens heretofore given by the State, was withdrawn by the act approved December 18, 1874. Therefore a writ of *mandamus* should be granted, commanding the suit of the plaintiff against the State to be dismissed.

H. A. HERBERT, SAMUEL F. RICE and THOS. H. WATTS, *contra.* — I. The Constitution embodies in the declaration of rights the carefully arranged words : " That suits may be brought against the State in such manner and in such courts as may be by law provided." By placing it there, the framers of the Constitution meant to confer a *right* to sue in *some court.* Before the adoption of the present Constitution and that of 1865, it had been broadly laid down that no such right existed ; that it was mere matter of grace on the part of the sovereign. That the State had power to permit suit against it, has never been denied. The declaration in the " Bill of Rights " was not intended therefore to confer the authority to allow such suits to be brought. Their office and intent were to create and affirm the *right* of suit and place it " upon the footing of fundamental, absolute rights." These were intended as enduring evidence of the *sovereign's consent* to be sued — beyond the power of recall by any of the sovereign's agents or servants, the executive, legislative, and judicial branches of government.

II. The " *manner* " of bringing suit, is the only thing over which the legislature is vested with power. The *right* to sue

is given by the Constitution.  That instrument declares that " courts shall be open . . . . every person shall have a remedy by due process of law," &c.  Now until some time is fixed by the legislature for holding those courts, this provision is not self executing.  Yet when these courts are established, *and a time fixed for holding them,* could any court sustain a law which repealed *all the acts* authorizing courts to hold terms, and providing no other time for holding them ?  The direct effect of the act would be to destroy that portion of the Constitution referred to.  Where acts have been passed to effectuate constitutional rights and provide a means of exercising and enforcing them, the legislature cannot *entirely repeal* the acts giving such remedies, and substitute none others in their stead ; for this would be to destroy the Constitution.  Laws having been made at the command of the Constitution, to give operation to a right it creates, any legislation working an entire repeal, is, in effect, not a repeal of a mere legislative act, but the repeal of a constitutional right.

III.  " A vested right of action, where it springs from contract on the principles of the common law, it is not competent for the legislature to take away."  Cooley's Cons. Lim. (3d ed.) p. 362 and notes; 16 Wallace, 690 ; 48 Ala. 433 ; 3 Dallas, 419 ; 7 English (Ark.), 321.  It is also a general principle that jurisdiction, once vested, is not divested, although a state of things should arise in which original jurisdiction could not be exercised, nor although it should appear that the judgment rendered will be unfruitful or unproductive to the plaintiff obtaining it.  *U. S.* v. *Schooner Little Charles,* 1 Brokenborough 347–355 (per Marshall, C. J.).  That the real source of the circuit court jurisdiction is the State Constitution is demonstrated by the opinion of MARSHALL, C. J., in *Duroussea* v. *U. S.* 6 Cranch, 312–14.

IV.  The case of *Beers* v. *Arkansas* (20 Howard), is not ad verse to the views contended for.  It decided simply the *effect of a change of remedy* in the right to sue, and not the abolition and destruction of the right.  The Constitution of Alabama is very different from that under which the Arkansas case arose.  The Arkansas Constitution did not by its terms give the *right* to sue the State; it merely directed the legislature to declare by law and in what manner suits may be commenced.  Until the legislature spoke, the *right* did not exist.  In Alabama, the Constitution itself gave the right.

V.  The act can have no retrospective construction — its only constitutional provisions do not require it.  *Dash* v. *Van Kleek,* 7 Johns ; 20 Michigan, 298.  Its second section is unconstitutional — the title does not cover its provisions.

BRICKELL, C. J. — The Constitution of 1819 declared, " The general assembly, shall direct, by law, in what manner, and in what courts, suits may be brought against the State." Cons. Art. 6, § 9. In 1820 and 1827, statutes were enacted, investing the circuit court with jurisdiction of suits against the State, when instituted by a citizen of the State, prescribing the mode in which they should be·commenced, conducted, and defended, and the mode of obtaining satisfaction, if judgment was rendered against the State. Clay's Dig. 339, §§ 143, 144, 145, 146. These statutes were substantially embodied in the Code of 1852, forming §§ 2138, 2139, 2140, 2172, thereof, and were carried into the Revised Code, forming §§ 2534, 2535, 2536, and 2571 thereof. In *Ex parte Green & Graham* (29 Ala. 52), the judge delivering the opinion asserted that these statutes did not authorize a suit in chancery against the State. The other judges, not deeming a decision of the question necessary in that case, expressed no opinion thereon. The doubt as to the liability of the State to be sued in chancery, thus created, led to the enactment of a statute investing the chancery courts with jurisdiction of suits by and against the State, when a citizen of the State, or a domestic corporation, was the adverse party. This statute forms § 3323 of the Revised Code.

At its present session the general assembly repealed the sections of the Revised Code authorizing suits either in the circuit court, or in the court of chancery against the State. The act is entitled, " An Act to repeal sections 2534, 2536, 2571, 3323, of the Revised Code of Alabama." The first section expressly repeals the sections named in the title. The second section declares all laws and parts of laws in conflict with the provisions of this act or which make any provisions for *bringing or conducting suits against this State be and the same are hereby repealed*. Section 2535 of the Revised Code which imposed on the solicitor of the circuit in which a suit was pending against the State, the duty of defending it, was not expressly repealed. There was no necessity for its repeal, as the office of solicitor of the circuit had been by the Constitution abolished, and it was of consequence incapable of operation.

At the passage of this repealing statute a suit was pending in the circuit court of Montgomery, brought against the State, by one W. A. C. Jones, a citizen of the State. After the passage of the statute, the attorney general moved the circuit court to strike the cause from the dockets. The motion was overruled, and the State by the attorney general ·now moves the court for a *mandamus* compelling the circuit court to grant the motion it overruled.

It is said in Bacon's Abridgment, " The king cannot be sued by his subjects by writ, for he cannot issue a command to him-

self." 8 Bac. Ab. 106. " The King," said Chief Justice Mark-
ham, to Edward IV., " cannot arrest a man upon suspicion of
felony or treason, as any of his subjects may, because if he
should wrong a man by such arrest, he can have no remedy
against him." 1 Hallam's Const. Hist. 385. There were
petitions allowed, by which the subject could obtain redress or
restitution from the crown of real or personal property, or pro-
ceed for the recovery of a private debt. But for an obligation
created by act of parliament, the faith of the parliament alone
was trusted, and to that an appeal for performance must have
been made. For the enforcement of such an obligation, it is
not believed, it was ever supposed in England, there was or
could be a judicial remedy. However this may be, the prin-
ciple recognized in this country, as to the several States of the
Union, is that expressed by C. J. TANEY, in *Beers* v. *State of
Arkansas*, 20 How. 529. " It is an established principle of
jurisprudence in all civilized nations that the sovereign cannot
be sued in its own courts, or in any other, without its consent
and permission; but it may, if it thinks proper, waive this
privilege, and permit itself to be made a party defendant in a
suit by individuals or by another State." No liability or obli-
gation can rest upon the State, not created by law. No officer
of the State can by his act without authority of law, create such
liability or obligation. In *Vandyke* v. *State* (24 Ala. 81), it
was declared a payment to the comptroller of moneys due the
State, can only be ratified by the sovereign power of the State,
the law-making power, and of consequence that a suit against
him, in the name of the State, for the recovery of such moneys,
instituted by direction of the governor, was not a ratification,
and could not be maintained. All obligations or liabilities rest-
ing upon the State, being creations of the legislative power of
the State, it is the good faith of the State alone, on which reli-
ance is placed to perform the obligation, or discharge the lia-
bility. Legal remedies, or their efficacy in enforcing the obliga-
tion or liability, are not contemplated as in cases of contracts be-
tween individuals. These are vain and useless against the State
without the concurrence of the legislative power. Statutes are
often passed permitting suits against the State. Such statutes
are matters of grace, confer privileges, — they do not create
rights, and are always construed like other statutes, conferring
privileges or exemptions on the citizen. The power to withdraw
is commensurate with the power to confer, and when the privi-
lege is withdrawn, the citizen is remitted to the condition in
which he stood when it was conferred. Many illustrations of
the principle are given by Judge Cooley, in his work on Con-
stitutional Limitations, and among others he mentions a statu-
tory right to have cases reviewed on appeal which may be taken

away, by a repeal of the statute, even as to causes which had been previously appealed. Cooley's Const. Lim. 382. The principle has often been applied to suits against the State. In the case of *Chisholm Ex'rs* v. *State of Georgia* (2 Dallas, 419), the supreme court of the United States decides that it had jurisdiction of a suit against a State, by a citizen of another State. The decision led to the adoption of the 11th amendment of the Constitution of the United States, declaring " the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by citizens of another State, or by citizens or subjects of any foreign State." When this amendment was adopted, the case of *Hollingsworth* v. *State of Virginia*, was pending in the supreme court, and the court unanimously declared it could not, after the adoption of the amendment, exercise any jurisdiction in any case, past or future, in which a State was sued by the citizens of another State, or by citizens, or subjects, of any foreign State. 3 Dallas, 378. The Constitution of Arkansas was in substance the same as our Constitution of 1819. " The General Assembly shall direct by law, in what courts and in what manner suits may be commenced against the State." The General Assembly of Arkansas made provisions for suits against the State. In reference to these, in the case of *Beers* v. *Arkansas, supra*, C. J. TANEY, said : " This permission (to sue the State) is altogether voluntary on the part of the sovereignty ; it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." A similar opinion was expressed in *Platenius* v. *State*, 17 Ark. 518. In *Huasaker* v. *Borden* (5 Cal. 288), it is held, that as a county is a mere political subdivision of the State, there is no right of suit against it, except as permitted by statute, and the permission could be withdrawn or denied at any time the legislature may think proper. The doctrine was reaffirmed in *Sharp* v. *Contra Costa County*, 34 Cal. 284. Under the influence of these authorities we must hold the statutes authorizing suits against the State conferred privileges on the citizen, — their repeal operated a withdrawal of the privilege, and the circuit court was without further jurisdiction to proceed in the cause it was moved to strike from the docket..

It seemed to be admitted by the counsel of the respondent, that such would have been the result, under the Constitution of 1819, but that the present Constitution confers on the citizen the right of suit, and therefore it was not competent for the general assembly by any enactment to impair or defeat this

right.   The present constitutional provision is, " that suits may be brought against the State in such courts as may by law be provided."   Const. art. 1, sec. 16.   The words of the present Constitution are less mandatory, and less adapted to the creation of a right, than were the words of the Constitution of 1819, if there is any real change in their signification.   The present provision was first introduced into the Constitution of 1865. The provision of the Constitution of 1819 had been incidentally considered in two cases in this court, [ *White* v. *Governor*, 18 Ala. 767; *Ex parte Greene & Graham*, 29 Ala. 52,] and it was said it was made the duty of the legislature to direct in what manner and in what courts suits should be brought against the State.   If any change in the constitutional provision can be supposed to have been intended by the change in the phraseology, we would be inclined to the opinion, the change was superinduced by these decisions, and the intent was not to create a duty on the legislature, but to confer a discretionary power coextensive with that recognized by the general " jurisprudence of all civilized nations."   Nor can any importance be attached to the place in the present Constitution in which the provision is found.   It is found under the title " Bill of Rights." A bill of rights, as recognized in American constitutions, is declaratory of the general principles of republican government, and affirmatory of rights inherent in the people and the individual citizen, not surrendered to, and incapable of invasion by the government the Constitution ordains and establishes. It matters not whether these are declared by the Constitution a bill of rights, or in what part of the Constitution they may be found.   It is these which are of controlling importance in the construction of the Constitution and the determination of governmental power.   Incorporating in the Constitution a provision not connected with these under the title of " Bill of Rights," will not convert it into a right akin to these.   The Constitution of the United States has no title of " Bill of Rights," yet the ten amendments first made to it have all the force and effect of, and were intended, as such.   They are esteemed of the same importance as the most formal bill of rights in a State Constitution.   In the Constitution of 1819, under the title of " General Provisions," was found the provision that in prosecutions for libel of public officers the truth of the matter could be given in evidence, and that the jury had the right to determine the law and fact.   This provision is now under the title of " Bill of Rights."   It was not entitled to less consideration because of the place in which it was found in the Constitution of 1819, nor does it derive any additional potency from the place it now occupies.   It conferred and now confers the full and free right to investigate and make public the official

[Key v. Jones.]

conduct of public men, without the terrors of a prosecution except for falsehood. It is the subject, the nature of a constitutional provision alone, that fixes its character as belonging to the class of rights usually expressed in the bill of rights, and which are chiefly derived from *Magna Charta*, and the petition of right.

A peremptory *mandamus* will be awarded commanding the circuit court to strike the cause from its docket.