State of Missouri ex rel. Seeligman, Relator, v. Hays et al., Fund Comm'rs.

THE STATE OF MISSOURI *ex rel.* MAURICE SEELIGMAN, Relator, *v.* SAMUEL HAYS AND DANIEL M. DRAPER, FUND COMMISSION-ERS, Respondents.

1. Mandamus — *United States constitution — Pacific railroad — State bonds, payment of — Action of Legislature touching — Supreme Court, powers of.* — The Pacific Railroad State bonds, issued under the act to expedite the construction of the Pacific Railroad and the Hannibal & St. Joseph Railroad, approved February 22, 1851, being payable on their face in gold and silver, can be met only by payment of the sum called for in gold and silver coin, and not by payment of the amount in legal-tender currency. The legal-tender act cannot affect this obligation. But where the Legislature has determined to pay the bonds in legal-tender currency, the Supreme Court has no power to interfere; and *mandamus* to compel the fund commissioners to pay said bonds in gold and silver coin will not lie.

Per WAGNER, Judge.

1. *Legislature, power of over appropriations — Supreme Court — Superintending control of.* — It was competent for the Legislature to modify or repeal the law appropriating the money for the payment of these bonds, and its action is not liable to superintendence or control by the judiciary.

The State may say in what manner its debt shall be paid, or that it shall not be paid. And its action may amount to a breach of faith; but there is no power to correct it.

## Petition for Mandamus.

*Sharp & Broadhead,* for relator.

*A. J. Baker,* Attorney-General, for respondents.

BLISS, Judge, delivered the opinion of the court.

The relator is the owner and holder of one of the Pacific Railroad State bonds issued under the act to expedite the construction of the Pacific Railroad and the Hannibal & St. Joseph Railroad, approved February 22, 1851, and payable upon its face "in gold or silver at the Phœnix bank in the city of New York," and has sued out of this court an alternative writ of *mandamus*, directed to defendants as fund commissioners, setting forth its issue under the act, its presentation at maturity at said Phœnix bank, and demand of payment in gold or silver, which was refused, and the creation of the sinking fund and its appropriation

in the hands of defendants for the redemption of the bonds of the State, covering the one presented. The return admits all the allegations of the writ, but sets up as a reason for not paying in gold and silver the following joint resolution of the general assembly of February 8, 1872 :

" Concurrent resolution instructing the fund commissioners to pay the State bonds which became due in 1872, in legal-tender notes.

" Whereas, four hundred and twenty-two bonds of the State of Missouri, of $1,000 each, issued during the year 1852, become redeemable the present year; and whereas, the following words occur in each of such bonds, to-wit, 'said State promises to pay in gold or silver coin;' and whereas, an act approved February 22, 1851, entitled 'An act to expedite the construction of the Pacific Railroad and the Hannibal & St. Joseph Railroad,' under which said bonds were issued, is printed on the back of each of said bonds, does not specify that the words ' gold or silver coin' shall be inserted in said bonds; and whereas, section 7 of said act sets forth the following language: ' and is redeemable at the pleasure of the Legislature at any time after the expiration of twenty years from the date thereof;' therefore, be it

" *Resolved*, by the senate, the house of representatives concurring therein, that the fund commissioners are hereby directed to instruct the financial agent of the State, the National Bank of Commerce in New York city, to redeem the bonds as they become respectively redeemable in the year 1872, in legal-tender notes."

No question is raised as to the previous appropriation to redeem the bonds. · In passing the above resolution the Legislature has taken it for granted, and only directs the manner in which they should be paid. That the bonds are payable in gold and silver coin, as they purport upon their face to be, I cannot entertain a doubt. The promise was to pay $1,000 in gold and silver, which could only mean at the time gold and silver dollars, and the only question is whether the legal-tender act absolves the obligor from the obligation thereby assumed. I am not at liberty to consider the question as an open one. The Federal Courts have jurisdiction in cases arising under Federal statutes, and the interpretation

given them by the United States Supreme Court is obligatory upon other tribunals. Obligations of the kind under consideration have frequently been brought before that court, and it has uniformly held them to be payable in gold or silver dollars, and not in legal-tender currency. The first case in which the question was considered was Bronson v. Rodes, 7 Wall. 229, where the court held (Justice Miller only dissenting) that a bond given in 1851, for the payment of a certain sum "in gold and silver coin, lawful money of the United States," could not be discharged by legal-tender notes amounting to such sum. This doctrine was affirmed in Butler v. Howitz, same volume, 258, and at the present term of the same court the question is again considered in Tubilcock v. Wilson. In the latter case a promissory note was given for $700 "payable in specie," and the court held the term to be merely descriptive of the kind of dollars in which the note was payable, there being different kinds in circulation recognized by law.

Nor do I think the obligor can now properly say that the governor, as its agent, exceeded his authority upon these two questions. I am still satisfied with the opinions given to the governor by Judge Adams and myself in January last, and think, as matters then stood, it was the duty of the fund commissioners to pay the bonds in gold or silver coin.

But the return shows their present duty in altogether a different light. The law-making power of the State has interfered and given positive directions in the matter, and the commissioners, as servants and agents of the State, are imperatively bound by these directions. It is not enough to say that the State cannot impair the obligation of a contract, for there is no way of enforcing such as those under consideration. It is purely a matter of public faith. No suit can be instituted against the State, and no executive officer can redeem its obligations further than furnished with money expressly appropriated for that purpose.

It is said that the appropriation was once made. True, but the same power may withdraw it, in whole or in part, or may prescribe conditions upon which it shall be used. The whole matter is under the control of the Legislature, and it would be simply

usurpation for the fund commissioners to act other than as directed by that body. We consider the joint resolution as a modification of the previous appropriation.

These are axioms of political law, and cannot be made plainer than by a simple statement; and the Legislature, which particularly represents the State, having determined to pay in Federal paper the bonds due in 1872, we cannot interfere to require its servants to pay in any other manner, although of opinion that it has thereby failed to meet the State's obligations. The wrong, if wrong there be, must be remedied by the Legislature itself.

The peremptory writ is refused. The other judges concur.

### SEPARATE OPINION OF JUDGE WAGNER.

I have not thought it necessary to examine the question whether the governor, in specifying in the bonds that they should be paid in gold or silver, transcended his authority or not, as the case as now presented turns wholly on a different point.

No money can be paid out of the State treasury without a specific appropriation for that purpose, and the same power that makes 'the appropriation has the sole and exclusive right to determine how and in what manner it shall be paid. It was competent for the Legislature to repeal the law appropriating the money to make the payment, or to modify it in such way as they thought proper. And their action in this respect is not liable to superintendence or control by the judicial department of the government.

The joint resolution prescribes the kind of money in which the obligations shall be paid, and the fund commissioners, who are mere ministerial officers, must obey the law and cannot discharge the liability in any other funds. The State may say in what manner its debt shall be paid, or that it shall not be paid; and it may amount to a breach of faith, but there is no power to coerce it. The joint resolution is binding authority on the commissioners, and they can act only as it directs. This is the only question in the record, and I concur in denying the writ.