### Nos. 8122 and 8163.

### THE STATE EX REL. S. J. HART *vs.* E. A. BURKE, TREASURER, ET AL., AND S. J. HART *vs.* E. A. BURKE, TREASURER.

The Plaintiff's demand in this case is virtually a proceeding against the State, levelled at her property and seeking by judicial compulsion the payment of her obligations.

For this purpose, the Auditor and Treasurer have no power to stand in judgment as her agents, when she has, in her Constitution, expressed her will adversely to such payment.

Therefore the State is not represented in this action, though the same is directed against her property.

State ex rel. Hart vs. Burke, Treasurer, et al.

The State could not be made a party to such proceedings without her consent.

The immunity of the State of Louisiana from suit in her own courts is absolute, and cannot be encroached upon by judicial proceedings, directly or indirectly, against herself or against her agents.

The Courts of Louisiana have no jurisdiction to entertain any judicial proceeding the object of which is to enforce the performance of any contract or obligation of the State, against her will.

Those Courts have no authority to declare that a provision of the State Constitution does not express the will of the State.

Those Courts have no power to annul or disregard a provision of the State Constitution on the ground that it impairs the obligations of a contract, except when the question is presented in some suit in whi·h the enforcement of that contract is demanded and in which it can be enforced.

Those Courts have no power to annul a provision of the State Constitution on the ground that it impairs the obligations of a contract with the State, because such a contract can never become the subject of judicial enforcement against the will of the State.

APPEALS from the Civil District Court for the parish of Orleans. Monroe, J. and Rightor, J.

---

*D. C. & L. L. Labatt* and *C. S. Rice* for the Relator and Appellant:

First—A State, through its constitutional provisions. no more than a legislature or judiciary can enact a law or render a decision which in effect impairs the obligation of a contract. 8 Wh. p. 92; Green vs. Riddle; Fletcher vs. Peck; and Dartmouth College case.

Second—Such legislation is annulled by the provision of the Federal Constitution, Art. 1, Sec. 10, and this article is a limitation on the asserted absolute sovereignty of the State in the exercise of certain attributes with which but'for this limitation it would be conceded it is supreme.

Third—The settled interpretation of the Federal Constitution by the Supreme Court of the United States, and the adjudged extent of the limitations therein imposed on State Legislatures, as expounded by them, is of paramount authority in the construction of those limitations, and binding on the State judiciary, anything in the State Constitution and laws to the contrary notwithstanding, and the State judges are in such cases *quasi* Federal officers, giving proper effect to the provisions of the organic and supreme law of the land.

Fourth—The " debt ordinance " in the Constitution of 1879 is a mere proposition to the bonded creditors of the State, and if one of its propositions or all are rejected or not accepted by them, is "*brutum fulmen*," and not enforceable in law.

Fifth—That the third article attempts to take away the creditor's property, and apply it to the debtor's other necessities, which is contrary to the principles of the social compact, and directly in conflict with the requirement, that one's property cannot be taken away, without " due process of law," and as "impairing the obligation of a contract:" See Saloy vs. City, and authorities there cited.

*J. C. Egan,* Attorney General, *contra:*

First—The Executive Department of the State of Louisiana is an independent department, co-ordinate with the legislative and judicial departments, and not a department subordinated to and subjected to the supervision and control of the judicial department. Const. 1879, Art. 9.

Second—The only case in which the judiciary may control the action of an officer of the Executive Department is where the remedy sought is the enforcement of the performance of a merely ministerial act, with regard to which the law has left nothing to the judgment or discretion of the officer. High on Extraordinary Legal Remedies, pp. 88, 33, 36, and secs. 42 and 80; 24 Tex. 317.

Third—This is a suit against the defendants, but against them in their respective official character as constitutional officers of the State of Louisiana, in relation to the performance of their respective offices. The State of Louisiana, and not the defendants, will be affected by any decree rendered against the defendants in this case, and, therefore, the suit is in substance and effect a suit against the State of Louisiana, of which the courts have no right to take cognizance, because the State is their sovereign. McCauley vs. Kellogg, 2 Woods, p. 22; Sedgwick on the Construction of Statutory and Constitutional Law, p. 538; Madrazzo vs. the Governor of Georgia, 1 Peters, 110.

Fourth—Officers cannot be enjoined from executing an unconstitutional law. 66 N. C. 356; 50 Mo. 34; Sedgwick, p. 538; 4 Wal. 475; 22 An. p. 1; 24 An. 350.

Fifth—No judgment can be rendered affecting the interest of parties unless they are before the court. And where the only parties interested are not before the court, the case must be dismissed. The duty of the judge is to hear a party before he makes a decision to his injury. 5 La. 329; 9 N. S. 464; 6 La. 454; 6 R. 299; 8 R. 97; 11 R. 171; 2 Woods 22.

Sixth—The writ of injunction is a mere conservative writ, and cannot be issued by a court which has no jurisdiction over the main cause of action. C. P. 171 and 172; 5 La. 109.

Seventh—The taxing power is an attribute of sovereignty not susceptible of ownership, and cannot form the object of a contract; and to contract not to repeal a law imposing a tax is not covered by article 1, section 10 of the Constitution of the United States. 4 W. 627, Dartmouth College vs. Woodward; Morey vs. State, 48 Miss. 159; 4 Otto, 650, Boyd vs. Alabama; 34 N. Y. 663; 1 Ohio, 600, Mechanics' and Traders' Bank vs. Debolt.

Eighth—No duty is ministerial which requires the exercise of judgment and reason, and which can be arrived at only by a process of reasoning, but those are ministerial which are plainly prescribed by law.

Ninth—"It is well settled that a mandamus will not lie against a public officer, where it is in effect a suit against the State." 2 Tex. 497; 22 Tex. 31.

*J. A. Campbell* on same side.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. These two cases, consolidated by consent, are to be determined by the same judgment.

The first case has for its object an injunction, which was to serve as a foundation for the other suit ; the second case contemplates a *mandamus,* for the enforcement of rights intended to be protected by the injunction.

Their purpose was to prevent the State Auditor and the State Treasurer from disposing of certain public monies, in the State treasury, to which plaintiff lays claim, and to compel those officers to pay, out of said monies, the amount demanded by the plaintiff, as due to him, viz : $75,000.

The complainant substantially avers, in his two petitions, blended together and taken as one—

That, by Act No. 3 of the year 1874, the State of Louisiana was authorized, for the purposes stated therein, to issue bonds for the sum of fifteen millions of dollars ($15,000,000) ; that he is the holder and owner of a large number of coupons, which were detached from bonds issued under that authority, and which fell due on the first of January, 1880 ; that provision was made by said act for the punctual and full

payment of the bonds and coupons issued thereunder, until the final retirement of the same ; that, under the terms of said act, taxes were to be and were actually levied and raised, to be appropriated exclusively to the payment of said debt ; that a large sum of such taxes, some $700,000 has been collected, and has been received by the State Treasurer and is in his keeping, custody and control as such ; that he has applied to the State Auditor to warrant on the State Treasurer for the payment of said coupons out of said sum ; that he has called upon the State Treasurer to pay said coupons out of said funds; that both the Auditor and the Treasurer have refused, the former to audit, the latter to pay, said coupons out of said funds; that he has good reasons to fear that, upon the pretended authority of an ordinance of the State Constitution, now in force, the said Auditor and the said Treasurer will illegally divert the sums so collected and on deposit, and in their control and disposition, and apply the same to purposes other than those contemplated by said act No. 3, of 1874 ; that there exists a formal contract between him and all bond and coupon holders, similarly situated, and the State of Louisiana, which contract is shielded from impairment by section 10 of article 1st of the Constitution of the United States ; that it is the *duty* of the Auditor to warrant, and of the Treasurer to pay, his said coupons, regardless of said constitutional provision ; that he is entitled to an injunction against said State officers to prevent them from disposing, to his prejudice, of the sums aforesaid, and to a *mandamus* to compel them to audit and pay him the said coupons; and he prays for the process of the court against them only in their official capacity; and, after due course of law, that the injunction be perpetuated, and the *mandamus* be made peremptory.

The State Auditor and the State Treasurer made appearance.

After pleading to the jurisdiction of the court over them, as executive officers of the government, they aver that the funds under their control and in their custody have come into their possession as State officers and as agents ; that they have no power to draw the same from the State treasury, except in pursuance of specific appropriation made by law; that they have no power by law to audit the claim set up, allow and pay the same; that they have no right to decide whether the State is chargeable with them or not ; that the laws making appropiation of public monies do not provide for the payment of the claim set forth ; that the Constitution in force directs and orders that the fund out of which the plaintiff seeks to be paid be used to defray the expenses of the State government; that the State of Louisiana is a necessary party to these proceedings, which are directed against her property, and that no adjudication can be had herein.

The view which we have taken of this case, does not require that

we should pass upon the plea to the jurisdiction of the judiciary over them, set up by the respondents.

It is established by the evidence that, under the laws of the State collections upon assessments of taxes, largely exceeding the sum claimed by plaintiff, have been made and were to be, for the payment of the interest on the consolidated bonds mentioned in the petition ; that the payment of the taxes and the delivery of the amounts thereof into the State Treasury took place after the adoption of the Constitution now in force.

It appears that, under article 3 of the ordinance therein, relative to the State debt, whereby the coupon of said bonds falling due the first of January, 1880, was "*remitted*," the·interest taxes collected to meet said coupon were transferred to defray the expenses of the State government, and the funds so appropriated have been disposed of to some extent for the payment of the general expenditures of the State and of the interest for the public debt, not including the instalment maturing on January 1st, 1880.

The petitioner claims that all the laws, organic and legislative, and all administrative arrangements which remit said coupon, and which direct the transfer·and application of said interest taxes to defray the expenses of the State government, must be disregarded, as impairing the obligations of the contract in favor of the bond and coupon holders. He insists, that it is the *imperative duty* of the Auditor and of the Treasurer, regardless of those provisions, after the receipt of the money from the source mentioned, to dispose of it for the sole purpose of paying the coupons of said bonds; that there can be no valid abrogation of the law imposing that duty upon them, and that their functions in that regard are above and beyond the power of the people and of the government of the State.

The plaintiff manifestly avers the validity of an existing executory contract, in which the State is the only obligor; he charges a violation of it by the State, and he asks an enforcement of it by the State judiciary against the State out of the property of the State within reach.

Practically, he demands that the State judiciary decree that he is a creditor of the State; that the property of the State, which is in the State treasury, shall be appropriated to the payment of the claim which he sets up; that the judiciary shall compel that appropriation, although the custodians of that property declare that it has not been appropriated by law to pay that claim, but has been, by formal and supreme command, ordered to be applied to other purposes of vital importance.

It may well be, as averred by the plaintiff, that the contract which he alleges is valid; that it is protected from impairment by the Constitution of the United States, and is binding upon the State of Louisiana;

that an attempt has been made by the State to violate that contract; nay, that the State has violated it. It may well be, that the funds which, he says, were collected to pay his claim and are in the State treasury, should be applied, under the terms of his contract, to the payment of his coupons; but, whatever his rights may be, how can he call upon this Court to enforce them, unless contradictorily with the obligor, the State, who is the only party interested, whose rights are involved, whose property is at stake.

The humblest citizen could not be deprived of his property unless by due course of law, after compliance with the law of the land, which hears before it condemns, which proceeds upon inquiry, which renders judgment only after trial, because every citizen holds his life, his liberty, his property and immunities, under the protection of the general rules which govern society. Webster, Dartmouth College case.

MAGNA CHARTA declares:

" *Nullus liber homo capietur vel imprisonatur, aut disaisietur, aut relegatur, aut exulatur, aut aligno modo destructur, nec super eum ibimus, nec super eum mittimus, nisi per legale judicium parium suorum, vel per legem terræ.*"

It is a principle laid down by Lord Bacon, that " when the king's right is questioned, he must be a party, for this, *res ipsa loquitur, vel potius claimat.* The king shall not be surprised, nor stricken upon his back, nor made *accessorium quidem* to the suit of another."

It is also laid down: " The rule ever holds between the king and the subject, that the king's right shall not be tried, except he be a party.

" And the judges make a wonder of it, when they are pressed and asked, what would you have us do by the king's right, without making him a party."

Collect. Juridica 1, p. 174.

How, then, could we proceed to judgment in this case, enforcing plaintiff's demand, when the State of Louisiana is not a party to this important suit.

We do not see, that the process of the court was asked against the State, nor do we discover that the State has entered any appearance, nor that any one has appeared in her behalf.

The money which is in the State treasury, from whatever source it is derived, is money which was due, which was paid, which belongs to and which is the property of, the State. It is money which cannot be drawn from that treasury, except in pursuance of specific appropriation made by law.

Const. of 1879, article 47, 30 An. 1312.

This suit has clearly for its object the appropriation in favor of a

private individual, who claims to be a creditor of the State, of money belonging to the State, which is in the State treasury, and which the State has ordered, by constitutional provision, shall not be applied to him, but shall be used to defray the general expenses of the government.

It is an undeniable proposition, that whenever the property of the State is judicially claimed, action is virtually against the State, which cannot be done unless with her formal consent.

The Supreme Court of the United States has said: "It is a familiar doctrine that the sovereign cannot be sued in his own courts without his consent. The doctrine rests upon reasons of public policy.

"*There is no distinction between suits against the government directly and suits against its property.*" The Syren, 7 Wall. 152.

The principle is of such antiquity that the memory of man runneth not to the contrary.

Under the feudal system, the maxim was: "*Roy nest lié par ascun statute, sil ne se soit expressement nosmé.*" Jenk. Cent. 307. "The nature of things opposes the opinion, that the judicial tribunals should be competent to determine that the government is a debtor."

3 Proudhon Dom. propriété.    No. 826, pp. 67–70; Chassat (des statuts) p. 249; Accolos. Man. de droit civ. I, VII; L. B. 32, 33.

"It is in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and practice of mankind; and the exemption, as one of the attributes of sovereignty, is enjoyed by the government of every State of the Union."

Hamilton, Federalist, No. 81.

The Court of King's Bench, in a late case, said: "Over the sovereign, we can have no power. In like manner, when parties are acting for the sovereign, whose servants they are, these are not amenable to our prerogative jurisdiction. When the money is paid, it is paid to the servants of the crown." L. B. 33.

The United States have always enjoyed the immunity.  9 U. S. R. 433, 486; 9 L. R. Ch. D. 351.

It is useless further to extract from authorities. It suffices to refer to the line of decisions to show how firmly settled is the principle; U. S. vs. Clark, 8 Pet. 444; U. S. vs. Ringold, 8 Pet. 150; The Syren, 7 Wall. 152; The Davis, 10 Wall. 15; Reside vs. Walker, 11 How. 272; Life Boats, 11 Allen (Mass.) 157; Bank of Washington vs. Ark. 20 How. 530; 16 Wall. 203, 317; 43 Ga. 365; 54 Ala. 67; 77 N. C. 142; 8 S. C. 207; 59 Tenn. 395; 57 Ala. 67; 43 N. Y. 399; 3 S. C. 124; 2 Wh. 233; 14 An. 636; 9 Wh. 738; 18 How. 331; 1 Bl. 436; 16 How. 432, 369; 6 Cal. 256; 3 Rich. S. C. 372; 18 How. 380; 1 Tex. 764; 2 Tex. 31; 24 Tex. 317; Federalist 81, p. 405; VI Webster's Works, 537.

Cases have sometimes occurred in which States were summoned to appear; but, when formally made a party to a judicial proceeding, without their consent, the States have declined to do more than protest against the jurisdiction and to instruct their counsel not to argue the case. Before such defense, the courts have to abstain. 17 How. 417, 518, 520.

When the judiciary department of the government was instituted to expound the law and to distribute justice among individuals, the State was not subjected to its authority. She cannot be assimilated to an individual citizen. The mission of the State is to take care of the universal or the general interest. She cannot be brought to the bar of justice and sentenced like an individual, still less forced to perform what might be considered to be an obligation. Clear cases of an administrative character may sometimes be submitted to the tribunals. Officers or agents may be arraigned for breach of actual duty, or for malfeasance in office, but only so long as the will of the State has not been expressed to the contrary. However numerous the exceptional cases may be, the rule unquestionably is that the State cannot be called without her formal consent before civil tribunals as individuals are, and that the judiciary cannot take cognizance of suits the object of which is to declare the State to be a debtor and to force the State to pay her debts, and that State officers cannot be compelled to act against the real will of the State. There is no instance of a suit commenced on a contract, for the performance of duty or payment of a debt, in which judgment was ever rendered against a State to coerce either.

It is well established by law and jurisprudence that even in proceedings *in rem*, in which title to the thing vests in a known or unknown owner, an actual or constructive notice to such owner is essentially necessary before condemnation, sale and distribution of proceeds. The rule applies even to mortgages. No adjudication can take place in the absence of the essential parties, whose rights are to be tested. 14 Wall. 94, 29; 16 How. 1; 3 Otto, 150; 1 Pet. 299; 1 Pet. 110; 8 Pet. 5; 3 Story, 335; 6 Wall. 280; 9 Wall. 364; 17 Wall. 78; 19 Wall. 563; 9 Cranch, 19; 2 Woods, 22; 3 L. 523; 5 L. 105, 122, 329; 6 L. 53, 119, 459; 17 L. 517; 3 R. 26, 140; 4 R. 140; 5 R. 500, 224; 6 R. 299, 351; 7 R. 181; 8 R. 171; O. R. 519, 387; 13 An. 201; 23 An. 617; 26 An. 608; 30 An. 177, 328, 576, 1119; 31 An. 305.

The answer of the plaintiff to the application of those principles is, that this Court has not been called upon to determine whether the State is a debtor or not; that the only requirement upon the Court is to compel the State Auditor and the State Treasurer to perform their duties in the premises; that it is not necessary to make the State a party *eo nomine;* that she is a willing party to the proceeding in the persons of

the Auditor and Treasurer, who are the legal custodians of her treasury, and who are bound in duty under a contract with the State to pay him; that the law in force at the time the bonds were issued, coupons whereof plaintiff holds, could not be and was not abrogated; that the Court has the power to adjudicate upon the claim contradictorily with those authorized representatives of the State, and that the judgment will be conclusive and irrevocable. Plaintiff further insists, as a last ground of relief, that this is a proceeding at the instance of the State herself, for the enforcement by her recreant officers of her acknowledged obligations under the contract which he has propounded and upon which he relies.

We do not understand this to be the signification of these proceedings. We consider that the petition asserts as a substantive and existing fact, which is the ground of the proceeding, that there is not concordance between the State in her sovereign authority and the active government of the State; that the executive agents of the State refuse to execute the will of the State, and are not in accord with their duty. The requirement upon the Court is to determine that the State is a debtor by the issue of bonds and coupons, some of which are produced and submitted to examination; that those bonds and coupons, or the latter, are to be paid out of the monies in the State treasury, that those officers are charged with the custody and control of that treasury and are bound to perform that duty, although the will of the State has been indisputably expressed to the contrary in an ordinance of the State Constitution.

The reply is, that from whatever standpoint it may be viewed, this is a proceeding against the State, either directly or indirectly; that its property is levelled against, and that this Court is called upon to order the defendants to take it from the State treasury against the will of the State, and to give it to the plaintiff; in other words, to compel the defendants to act beyond their powers.

It is established by authority beyond question, that as a State cannot be sued directly without her consent, she cannot be brought into court indirectly by proceedings against a State agent, a nominal defendant, by a private individual claiming to be her creditor, in an action really involving an interest of the State, a question of title to property; and that the courts will not permit such a claim to be enforced circuitously by *mandamus* against a treasurer. Printup vs. Cherokee R. R. Co., 43 Ga. 365; Horner vs. DeYoung, 1 Tex. 764; 51 Me. 461; 2 Tex. 497; 22 Tex. 31; 24 Tex. 317.

The dilemma is this : If the suit is against the defendants in their official capacity, and the claim is made upon them in their official capacity, the State may be considered a party to the record. If the suit is against the officers as individuals merely, and the offices they hold are

NEW ORLEANS, APRIL, 1881. 507

State ex rel. Hart vs. Burke, Treasurer, et al.

given solely to describe their persons, they have no interest, and no decree should be rendered against them. Madrago vs. Georgia, 1 Pet. 110; McCauley vs. Kellogg, 2 Woods C. C. 22.

If the questions involved can be tried and decided contradictorily with the Auditor and Treasurer, then the State can be coerced and sued. It is, in fact, to permit the petitioner by the writs of *mandamus* and injunction, to seize the money in the treasury of the State, and to apply the same to the satisfaction of his claim as a creditor of the State, without hearing the State and against her expressed will. The State was not made a party, the State cannot be made a party, the State has not made herself a party; the Court is without power to make her a party against her will; and in her absence it cannot adjudicate upon the claims set up adversely to her in defiance of what she has thought proper to command in the local, fundamental and paramount law.

The defendants are State functionaries, clothed with such powers only as the State chooses to confer upon them. Like all other principals, the State has a perfect right to recall the powers which she may have delegated to her mandataries, to enlarge or restrict their functions, to direct them in the management of her interests, in the disposition of her moneys, revenues, rights and property. R. C. C. 3027.

We are aware of no principle which excepts the relations of States to their constituted official agents from the general rule of revocability, which applies to all other mandates.

Acting in her sovereign capacity through a Constitution framed by representatives direct from the people for the purpose, and ratified by the latter, the State has revoked and withdrawn from the Auditor and Treasurer the power of attorney which they formerly held from her, and under which they were previously authorized and directed to perform as her agents the functions sought to be enforced. The effect of this revocation has been a withdrawal and termination of these powers from those agents as to this subject and an assumption of the same by the State.

If the State herself were subject to suit, she might be informed by her courts of her obligation to perform those duties; since she acts only through agents, these, when *authorized to represent her*, might be compelled to execute the judgment of the court, which then would be against the State; but how can it be held that an agent whose powers have been revoked by his principal can any longer represent that principal, particularly when he is sought to be made to perform acts against which his principal has in unmistakable language formally set his will.

In a case bearing great analogy to the present one, this Court once said:

" As to the question whether the State by her legislation has im-

paired the obligations of her contract with the relator, we are of opinion that the matter cannot be decided in this controversy, because the State is not a party to the suit, and the Auditor has no interest in the solution of the question. The same authority which prescribed the duty could, and did revoke it." State ex rel. McCauley vs. Clinton, Auditor, 27 An. 430; Succession of D'Aquin, 9 An. 400; Ex parte State, 52 Ala. 231; People vs. Supervisors, 64 N. Y. 600; State vs. Bishop, 42 Mo. 504.

We have been shown no law or authority which authorizes the respondents to stand in judgment and to represent the State when claims are urged to money belonging to her, in the State Treasury, which the State has formally directed, by an article in her Constitution, to be applied to objects other than those sought to be attained by the complainant, and we are at a loss to know what law makes it *now* their duty to apply the funds aimed at to the satisfaction of the demand of plaintiff.

We have been referred to authorities, to the effect that where an officer pleads the authority of an unconstitutional law as a justification for the non-performance or violation of his duty, this will not prevent the issue of the writ. 9 Wh. 859; 16 Wall. 220. This may be so where the authority invoked is a statute unconstitutional under the State Constitution, but it is differently where the authority is an article in the Constitution itself.

No officer of the State can be compelled by *mandamus* to do for, or on behalf of, the State anything against the *will* of the State that he should not do so.

The theory on which the *writ* issues in the name of the State is, that the officer refusing to execute the will of the State, the power of the State is resorted to in order to compel him to execute that will.

The provision of the Constitution of 1879, attacked by the petitioner, may be violative of the Constitution of the United States. It may be that, if the State were suable, she could furnish no defense against the claims of creditors, the obligations of whose contracts she may have impaired; that, if invoked between such creditors and private or corporate persons, the constitutional provision involved would be brushed away, as being of no effect; but however that may be, it cannot be disputed that it expresses the will of the State, the direct voice of the people, in whom the State sovereignty resides, and by whom it can be announced and exercised.

As an expression of the will of the State, it stands on an entirely different footing from an unconstitutional statute of a State Legislature, which is not the will of the State herself, but only that of the agents of the State, whose utterances have effect only while they act within the powers confided to them. The State has not conferred on her legislative

agents the power of violating her constitutional provisions. Statutes thus passed being mere enactments, lifeless forms, are not expressions of the will of the State in any sense.

When, as in the Virginia case recently decided by the Supreme Court of the United States (Hartmann vs. Greenhow, Treasurer City of Richmond, No. 154), an officer is sought to be compelled to execute the will of the State, that will is ascertained without reference to such unconstitutional statute, which is not an expression of the State, but is an act of her agents, entirely *ultra vires*, and in no manner representative of the State.

So, when a question affecting the validity even of a provision of the State Constitution itself, on the ground of conflict with the Federal Constitution, arises in a litigation between parties amenable to judicial process, and whose rights are subject to judicial determination, courts may, and must determine such question, and deny effect to the provision, if it be found to be violative of the paramount law. But, though a State impair, nay, repudiate the obligation of her own contracts, and though if she were liable to suit, courts might annul her acts in that direction, yet, as she is not amenable to suit, it does not lie within the sphere of judicial power to *compel* her to perform her obligations. When the State herself, acting primarily, expresses her will and makes it mandatory to her own executive officers in their action, in matters affecting exclusively her own business, it would be absurd to suppose that she leaves to anybody the right to sue in her name, to compel such officers to disobey her will.

None of the cases cited sustain the contention of the relator, that the contracts of a State can be enforced by judicial proceedings against her, through process served on officers who have no interest, and are, therefore, *nominal* parties.

We have attentively read and considered not only the act relied upon by the plaintiff, but also those defining the duties of the State Auditor and of the State Treasurer, and we do not find in them any delegation of authority to them by the State to represent her in a case of this description.

Had such power been conferred, it would still remain an important question to be solved, whether it could be considered as irrevocably conceded, or as conferred to last only during the State's good pleasure. In this regard, in connection with what we have previously said, we add that it has been decided that statutes permitting the State to be sued, are mere matters of grace, conferring not *rights* but *privileges*, which can be withdrawn by the State at pleasure. Ex parte State, 52 Ala. 231; State vs. Clinton, 27 An. 430.

It has been besides held, that where a State becomes voluntarily a

party to an action in her own courts, she may be informed and advised by the court as to her rights and obligations; but that with the exposition of the same, the powers of the court terminate, and that the judgment so rendered cannot be enforced against her by the process of the court. Dabney vs. Bank of the State, 3 S. C. 124; Garr vs. Bright, 1 Barb. N. Y. ch. 157; Maning vs. State, 14 How. (N. Y.) pr. 517.

A reference to the statutes of the State shows that the State can be represented before courts of justice in civil cases by her Attorney General alone, and even then, in proper cases only. R. S. 131; 9 An. 400; 5 N. S. 527; 25 An. 434; 29 An. 774.

The petition in this case is not presented by the State in her own name and for her benefit, and is not signed by the Attorney General. Had this been done, the authority, for such a course, might have been disputed by the defendants, who could have successfully questioned the institution and prosecution of such a suit. Ex parte Drum, 8 S. C. 207.

" The power of appearing for another in judicial proceedings is a very grave power, and one which the law scrutinizes in the cases of individuals, and the importance of such a power is obviously not to be less appreciated in the case of the State. The consequence of a power to appear for another in a court of justice is the irrevocably binding force of *the thing adjudged*, upon the party for whom the appearance is made; and, where the interests of the State, which are the interests of all its citizens, are involved, a court of justice should not pass upon those interests unless the State is properly before it through the officers recognized as its representatives by the constitution or law."

Succession of D'Aquin, 9 An. 400; 11 Wall. 199.

It cannot, with any shadow of plausibility, be claimed that the plaintiff and his counsel have the right to represent the State, and to make in her name judicial admissions, intended to be conclusive upon her, of the character of those embraced in the petition. No such power was ever conferred. If it were only required that averments be made, in her name, in courts of justice, by any one claiming to be her creditor, in order to justify a *mandamus* against her disbursing officers, her treasury would never retain a copper of the revenues which the law has created for the existence and support of the government. 22 An. 298, 379.

It is a matter which is not free from doubt, whether a party who applies for the process of *mandamus*, can use the name of the State even to place himself in court. The only proper parties to such a proceeding are the petitioner or petitioners claiming to be interested in the performance of the alleged duty, and the party upon whom it is charged that the duty devolves by law. 7 S. C. 275; 3 Houst. Del. 27; 1 Otto, 343;

51 Miss. 406; C. P. 840; 11 An. 141; 29 An. 793; 30 An. 1312. It has not unfrequently occurred, however, that the applications have been made in the name of the State on the relation of the interested party, and such is the general practice. The law does not require or authorize the petition to be made in the name of the State. It is the order only, when granted, that so issues. C. P. 840, 829. Whatever the practice or the right, if any, may be, it cannot be permitted to be extended further than to allow the use of the name of the State for a *nominal* purpose only, in cases where the will of the State is presumed and invoked.

In no instance can it be tolerated for the purpose of making the State a *real* party plaintiff in the proceeding. The privilege can surely not be enjoyed in a case against State officers, whose powers have been recalled, where the rights and pretensions set up by private individuals are disputed and controverted, and when the property of a State, money of the State in her treasury, is at stake, and when the State is not actually or constructively made a party, and is not therefore properly represented, and has expressed an adverse will.

Finally, by not being allowed the summary relief which the plaintiff claims at our hands, it does not appear to us that he has any just cause of complaint.

" The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretense to a compulsive force. They convey no right of action independent of the sovereign." Hamilton, Fed. 81.

" The true definition of public debt is a property subsisting in the faith of the government. Its essence is promise. Its definite value depends upon the reliance that the promise will be definitely fulfilled." Hamilton, v. 3, Pub. Credit, p. 517.

In the case of the Bank of Washington vs. Arkansas, 20 How. 530, Chief Justice Taney said :

" Those who deal in the bonds and obligations of a sovereign are aware that they must rely altogether on the sense of justice and good faith of the State, and that the judiciary of the State cannot enforce the contracts without the consent of the State, and the courts of the United States are expressly prohibited from exercising such jurisdiction."

The plaintiff and all others similarly situated, knew of those superior immunities, and must be presumed to have been aware of the high prerogative of a State to recall at pleasure the powers delegated by her to her executive officers, and to resume the exercise of the same.

We do not understand, if the State is under obligations to the plaintiff and to others asserting like rights, that by enacting the debt ordinance, so loudly denounced, she has repudiated a debt said to be legally and morally binding upon her. She virtually admits, for the time being,

her inability under the pressure of some imperious necessity, to satisfy the plaintiff's claim, and postpones or remits payment of the same to better and more prosperous times. 43 N. Y. 399; 20 How. 527, 532; 17 Ark. 518; 52 Ala. 231; 3 S. C. 124; 59 Tenn. 395. But, in a case like this, where is the judicial power which can ascertain and proclaim a liability, when the State herself has not been and cannot be made a party; and even then, where is the power to enforce the execution of this obligation by the State, when she has solemnly proclaimed her inability, or even her unwillingness, for reasons of her own, of the sufficiency of which she is the sole judge ?

We do not consider that the Auditor and Treasurer have a right to assert and vindicate the title of the State to the ownership of the money in the treasury, out of which the petitioner seeks to be paid, for that would be admitting in them the right of representing the State, a right which they have not. 43 Geo. 365; 9 An. 400; 27 An. 430.

It is enough for the respondents to aver and show that the money in question is the property of the State, and was not appropriated by the Constitution or by law to the payment of the plaintiff's claim; that the will of the State is adverse to his demand, and that the petitioner does not show that it is actually their clear duty to apply it to his demand, in order to justify the court in declining to pass upon the questions raised by the plaintiff, so as to allow his demand. 64 N. Y. 600; 66 N. C. 386; 50 Mo. 34; 24 Tex. 317; 17 How. 284; 6 How. 92; 12 Pet. 524; 14 Pet. 417; 11 How. 270; High on Ex. Leg. Rem. 33, 36, 42, 80, 107, 110.

After a full examination of the laws conferring jurisdiction upon the Civil District Court, by which this case was originally tried; we are constrained to decline the assumption of the supreme and sovereign power which the plaintiff invokes.

No Constitution or law of this State has ever clothed the District Court or this Court with authority to entertain the claim of any individual to support a suit against the State, and to award judgment for the payment of the same, or to force her to make indemnity for breach of her obligations or duties, in her dealings, without her consent formally expressed, which is found totally lacking in the present case, in which her adverse will manifestly appears.

The general sense and common usage of states and nations has been, and still is, to withhold from the judiciary department a cognizance of all such demands as are presented without such consent. This is not a suit or process against a municipal corporation through its officers, whose contracts stand on the same footing with those of private individuals, and are equally protected by the Constitution of the United States from impairment by any act of the State. Such corporations are liable to suit at the demand of any creditor contradictorily with them;

all questions of law, statutory or fundamental, affecting rights and obligations, arising under contracts, can be litigated and subjected to the determination of courts. The precedents applicable to actions against such corporations have no application to the present proceeding, which aims at the enforcement of obligations of the State herself, against whom no judicial coercion can in any form be exercised.

We wish it distinctly understood, that we do not, in any manner, pass upon the rights of the petitioner under the contracts set up by him; that we do not decide whether such contracts do or not exist, or whether or not the obligations thereof have been impaired by any action of the State.

We simply decide that under the laws, jurisprudence and system of practice prevailing in this State, and regulating the powers of Louisiana courts, the remedies invoked by the plaintiff in these cases, are such as no courts of this State possess, or ever possessed, the power to grant in a proceeding of the character of that presented.

The District Judges who tried and determined these cases have exceeded the bounds of their jurisdiction in passing in any manner upon the merits of the cause.

The judgment perpetuating the injunction is erroneous. The judgment refusing the *mandamus* is correct.

It is, therefore, ordered, adjudged and decreed that the judgment rendered in case No. 8163, perpetuating the injunction asked, be reversed, and that the petition for such injunction be refused.

It is further ordered, adjudged and decreed that the decree rendered in case No. 8122, declining the writ of *mandamus*, be affirmed, the plaintiff, in the two cases, to pay the costs in both the lower and appellate courts.

---

## ON APPLICATION FOR REHEARING.

The opinion of the Court was delivered by

FENNER, J. We had supposed that, in our original opinion herein, we had eliminated from discussion, as entirely inapplicable to this case, the following lines of authority, viz.:

1st. Cases affirming the doctrine that, in adjudicating upon contracts made between parties who are amenable to such, and are properly parties to the suit, courts will enforce the obligations of such contracts, and will disregard and declare null and void any law or constitutional provision of the State, impairing such obligations, in violation of the Constitution of the United States.

2d. Cases affirming the doctrine that, where State officers, acting as the agents of the State, are called upon to perform some ministerial duty imposed upon them by the will and direction of their principal,

33

and set up, as an excuse for non-performance, some act of the Legislature of the State violative of the constitution of the State or of the United States, such act will be disregarded and declared null and void and not binding upon them, because not expressive of the will of their principal, the State, which never authorized her legislative agents to pass any unconstitutional law.

3'd. Cases affirming the doctrine that, where States are actors in suits or voluntarily submit to become defendants therein, the rights and obligations involved in such proceedings must be determined upon the same principles as those applied in the first class of cases above indicated.

The jurisprudence of this Court, even within its brief history, as at present constituted, as well as during its antecedent history, establish our concurrence with, and consistent enforcement of all the doctrines above enunciated, and our opinion in this case contains nothing expressly or impliedly inconsistent therewith.

The original briefs of counsel were burdened with authorities sustaining these doctrines, which received our fullest consideration, and it was superfluous to recapitulate and dwell upon them in this application for rehearing, because they are fully accepted by us as authority upon the points decided therein, and are without application to the question here in controversy.

Every case quoted by counsel, except one, hereafter to be discussed, falls distinctly within one of the classes above categoried. His own case falls within none of them.

The excepted case just referred to is the case of Davis vs. Gray, 16 Wall. 203. That was a suit by the receiver of a railroad company, claiming to own or have rights to certain lands under a valid grant from the State of Texas, brought against the Governor and Land Commissioner of the State to restrain them by injunction from issuing patents for said lands to other persons, under the authority of provisions of the constitution of the State passed subsequently to the grant and impairing the obligation of the contract. The court decreed the nullity of the constitutional provisions, and perpetuated the injunction. The decree, however, was not entered without the vigorous dissent of Chief Justice Chase and Mr. Justice Davis, who said: " We are constrained to enter our dissent to the opinion and judgment of the court in this case, for the reason that this suit, although in form otherwise, is, in effect, against the State of Texas. The object which it seeks to obtain shows this to be so, which is to deprive the State of the power to dispose, in its own way, of its public lands, and this object, by the decision just rendered, is accomplished. In our judgment, the bill should have been dismissed, because the State is exempt from suit at

the instance of private persons, and on the face of the bill it is apparent that the State is arraigned as a defendant."

This emphatic expression of these distinguished jurists, in a case so much less objectionable than the present, might have moderated the vehement confidence with which the correctness of our own conclusions is assailed by counsel in this case.

Distinctions between that case and the instant one might well be drawn; and we do not, for an instant, believe that the majority of the Court, while exercising its judicial power to protect the rights and titles of individuals in and upon specific lands, against invasion or destruction by the State through her officers, would have carried the doctrine so far as to compel the State, through her officers, against her will, to perform her mere pecuniary obligations and to thrust the hand of the court into the State treasury for the purpose of extracting therefrom money and compelling its application to the payment of her debts. The pretension that the funds here claimed are the *property* of relator, or that the claim set up by him is any thing less than to demand payment of a debt alleged against the State, by the State through her officers, out of moneys in the treasury of the State and belonging to the State, is utterly unfounded, and cannot be seriously considered.

But it is not, in the slightest degree necessary to maintain such distinctions. The grounds upon which the jurisdiction (the only question with which we are concerned) was maintained, have no application here. The question there involved was the jurisdiction of a *court of the United States* sitting and administering justice in the *State of Texas*. Manifestly, the only possible laws governing the question of jurisdiction in such a case, were, first, the laws and jurisprudence of the United States governing its own courts; and, second, the laws and jurisprudence of the State of Texas. The court, therefore, examined the jurisprudence of the United States, and the jurisprudence of Texas. Under the former, it found no objection. With reference to the latter, it said : "In Curran vs. Arkansas et al. * * the objection was taken that the State could not be sued. This Court answered that it involved a question of local law, and that, as the State permitted herself to be sued in her own tribunals, that was conclusive upon the subject. According to the jurisprudence of Texas, *suits like this* can be maintained against the public officers who appropriately represent her, touching the interests involved in the controversy. * * A party, by going into a national court, does not lose any right or appropriate remedy of which he might have availed himself in the State courts of the same locality. * * Upon the grounds of the jurisprudence of both the United States and of Texas, we hold this bill well brought as regards the defendants."

In the present case, we are concerned exclusively with the jurisdic-

tion of the courts of Louisiana, governed exclusively by the laws and jurisprudence of Louisiana, and not in any degree by the laws and jurisprudence either of the United States or of Texas. It is, therefore, manifest that the case just quoted has no application or binding force as authority.

Our original opinion demonstrates the care and research with which we have examined the question of the jurisdiction of Louisiana courts over controversies of the character here involved.

The several States composing the United States are sovereign and independent in all things not surrendered to the national government by the constitution of the United States.

2 Cranch, 445; 1 Wheat. 91.

Whatever controversy may have arisen amongst publicists as to the nature and extent of powers granted or reserved, no authority worthy of respect has ever questioned the correctness of this general proposition.

We have never heard it asserted that the sovereign right of immunity from suit, without her consent, *in her own tribunals*, has ever been surrendered by any State, under any provision of the Federal Constitution.

This attribute of sovereignty pertains to the State of Louisiana as completely as if the Constitution of the United States did not exist, and is, in no manner, affected thereby. Let it be observed that we confine our remarks exclusively to the State tribunals, and make no reference to the powers of the Federal tribunals, which must determine their own jurisdiction. So far as her own courts are concerned, the State of Louisiana is entitled to the same immunity from suit therein as England, or France, or any unlimited sovereignty can claim with reference to their courts.

The immunity of the State of Louisiana from suit in her own courts means absolute immunity from judicial compulsion, directly or indirectly, so far as the performance of her own contracts or obligations are concerned.

Neither personally by proceedings against herself, nor vicariously by proceedings against her agents, can she be compelled by her courts to perform any obligation or contract, however solemn, which she does not choose to perform.

The act of the agent is the act of the principal, and if we should compel the defendants herein, as agents of the State, to execute, for her, her alleged contract, against her will, it would be the entire equivalent of judgment and execution against the State.

When we read in the Constitution of the State that the funds, which the relator asks to have paid over to him, are directed to be otherwise

disposed of, that puts an end to this controversy so far as the courts of Louisiana are concerned. It expresses unquestionably the will of the State.

The State courts, in the exercise of the powers and duties imposed upon them by the Constitution of the United States and confirmed by the Constitution of the State, have the undoubted right to pronounce the nullity of provisions of the State Constitution on the ground that they violate the paramount law, by impairing the obligation of contracts. But that can only be done in suits within the jurisdiction of the court, and involving the enforcement of such contracts. As the contract of a State cannot be judicially enforced against her by her own courts, it follows that the question, whether or not a provision of her Constitution impairs the obligation of her own contract, can never be the subject of judicial cognition.

When the relator asks us to pronounce the nullity of this constitutional provision on the ground that it impairs the obligations of an alleged contract between him and the State, we say to him, " we have nothing to do with your contract; we cannot look at it; we have no power to enforce it; we have no jurisdiction over it."

The writ of mandamus was never given, or intended, as a remedy to enforce the contracts of the State, and cannot be used for that purpose, against the will of the State.

We wish the following propositions to be distinctly understood:

1st. We have not decided whether or not the third article of the debt ordinance of the State is or not valid and binding so far as it affects any particular right or rights of individuals. We say it is valid except so far as it impairs the obligation of some particular contract protected by the Constitution of the United States, and, in this respect, stands upon the same footing with every other provision of the Constitution, and is equally entitled to the obedience of the officers of the State, who have no authority to question its validity.

2d. We have not decided that the contract alleged by plaintiff and relator is or is not a valid and binding contract; nor have we decided whether or not its obligations have been impaired by the constitutional provision above referred to. We have simply held that, being a contract with the State, and the rights claimed under it being rights against the State, the courts of Louisiana have no jurisdiction, directly or indirectly, to enforce the same; and that, in the absence of power to enforce such a contract, or to entertain any suit upon the same, we are not called upon to listen to, or decide, mere moot questions as to whether the obligations of the contract are, or are not, impaired by some provision of the State Constitution.

3d. We have decided that the remedies invoked in these cases are

an attempt to subject the State to judicial compulsion—to compel her, against her will, to perform her contract obligations and to pay her debts; and that, under the laws of Louisiana, no court of the State has ever been vested with jurisdiction to exercise such compulsion in any form of proceeding whatever. The immunity of the State from control by her own courts in reference to her own obligations, is absolute and plenary. It is subjected to no exceptions. It is restricted to no forms of proceeding. It is hedged in by no limitations of any kind. It places the State and her obligations and contracts entirely outside of the sphere of judicial action, so far as the courts of this State are concerned. This excludes from our consideration the contract set up by relator and all the features thereof, and all the rights, remedies and privileges claimed by the relator thereunder. It matters not what may be the provisions of that contract. All contracts of the State stand upon the same footing, so far as our power to enforce them is concerned.

4th. We have decided no question whatever except the jurisdiction of Louisiana courts, under Louisiana law, over this suit.

We have acted under the highest sense of judicial responsibility. We have no mandate to adjudicate upon questions affecting the lives, liberty, property and rights of litigants, except that which is received from the State of Louisiana. Our responsibility is sufficiently great when we act within the clear limits of that mandate. It is intolerable when we are even in doubt as to whether we are not exceeding the limits of our authority.

Our conclusions are perfectly settled on the following points :

1st. That the courts of Louisiana have no jurisdiction to entertain any judicial proceeding the object of which is to enforce the performance of any contract or obligation of the State against her will.

2d. Those courts have no authority to declare that a provision of the State constitution does not express the will of the State.

The opposite idea advanced by counsel can rest on no other basis than some mistaken analogy between acts of legislative agents of the State and acts of the State herself ; or else, upon the vicious premises that, in some sense the State derives her power of willing and acting from the Federal Constitution. The effect of the Federal Constitution is not to deprive the State of the power of volition, but simply to restrain the operation and execution of her will, so far, and so far only, as it conflicts with the prohibitions of that instrument.

3d. Those courts have no power to annul or disregard a provision of the State constitution on the ground that it impairs the obligations of a contract, except when the question is presented in some suit in which the enforcement of that contract is demanded, and in which it can be enforced.

4th. Those courts have no power to annul a provision of the State constitution on the ground that it impairs the obligation of a contract with the State, because such a contract can never become the subject of judicial enforcement against the will of the State.

What sanction may exist for the enforcement of that provision of the Federal Constitution prohibiting a State from impairing the obligations of her own contracts, it is not for us to say. The Federal courts must determine, for themselves, their powers in the premises. The political departments of the Federal government must determine whether the subject lies within their domain. We content ourselves with declaring that the courts of Louisiana are absolutely without jurisdiction over the question.

Some philosophic writer has said, in substance, that though Truth is, in her nature, one, eternal, and indivisible, yet the Truth hath many similitudes which masquerade in her form and perplex and mislead her followers.

The most elevated of judicial functions is to distinguish between Truth herself and such similitudes.

The theories and arguments of counsel for relator are ingenious, plausible and urged with evident sincerity of conviction. But the legal mind must conclude that any proposition or theory, however skilfully formulated, which conflicts with the fundamental exemption of the State from judicial coercion, in any manner or under any form of proceeding, by her own courts, must necessarily be a mere similitude of Truth, and not Truth itself.

We deem it proper, in conclusion, to refer to a charge of inconsistency brought by counsel against our original opinion. He says we first declined to pass upon the question of jurisdiction presented in the plea of defendants, and then decided the whole case on the question of jurisdiction. It was scarcely candid to ignore the patent fact that the question of jurisdiction upon which we declined to pass, was the special plea based upon the ground that, as executive officers of the State, they were exempt from judicial control in any case, while our actual declination of jurisdiction was based upon entirely different grounds.

An equally mistaken construction is placed by counsel upon that clause of the opinion which stated that "the funds referred to by the plaintiff have been disposed of to some extent for the payment of the general expenses of the State and of the interest of the public debt, etc." In those expressions, we did not refer to any actual disposition of the funds by the treasurer or fiscal agent, but to the provisions for their disposition made in the laws passed by the General Assembly at its last session.

For these reasons, it is ordered that the rehearing be refused.