## THE DAVIS.

1. Personal property of the United States on board of a vessel, for transportation from one point to another, is liable to a lien for salvage services rendered in saving the property.
2. Such lien cannot be enforced by the courts by a suit against the United States.

3. Nor by a proceeding *in rem* when the possession of the property can only be had by taking it out of the actual possession of the officers or agents of the government charged therewith.

4. It may be enforced by a proceeding *in rem* where the process of the court can be enforced without disturbing the possession of the government, which, being thus compelled to appear in the court to assert its claim, must discharge the lien before the property will be delivered to it.

APPEAL from the Circuit Court for the Southern District of New York, the case being thus:

In 1865, Simeon Draper, treasury agent of the United States, shipped from Savannah a quantity of cotton on the schooner Davis, of which one Kemplen was master, to be carried and delivered to him, the said cotton agent of the United States, or his assigns, in New York. For this, the master gave the usual bills of lading, and was to run freight at the rate of fifteen cents a ton per day. On the voyage, the vessel met with a disaster, and she and her cargo were saved from total loss by the meritorious service of one Douglas and others. The vessel was carried by Douglas and the others, her salvors, to a place of safety, and left to find her way into the port of New York. Immediately on her arrival, and before any of the cotton was delivered to the agent, Douglas libelled the vessel and cargo, and a writ being issued, the marshal took possession of them under it. The United States appeared by attorney as claimant of the cotton, and interposed the defence that it was not liable to salvage under the circumstances.

The District Court admitted that the services were salvage services, and fixing their worth at a certain sum, entered a decree against the vessel for its proportion of the same; but "inasmuch as the cotton saved was in possession of and claimed by the United States, as the United States intervened, claiming the said cotton, and setting up that no lien existed, and that no attachment could be made against it in possession of the United States," dismissed the libel as to the cotton. The Circuit Court reversed the decree, so far as it relieved the cotton, affirming it in other respects.

From this decree of the Circuit Court the United States appealed, and two questions were raised by the record:

1st. Whether personal property of the United States, on board a vessel for transportation from one point to another, was subject to a lien for salvage services rendered in saving the property.

2d. Under what circumstances, if any, could the lien be enforced, if any lien existed.

*Mr. Hoar, Attorney-General, and Mr. W. A. Field, Assistant Attorney-General, for the United States:*

In *The Siren*,* this court, after saying that it is a familiar doctrine of the common law, that the sovereign cannot be sued in his own courts without his consent; that this doc-trine is equally applicable to the supreme authority of the United States; that, therefore, they cannot be subjected to legal proceedings at law or in equity without their consent, and that whoever institutes such proceedings must bring his case within the authority of some act of Congress, says:

"The same exemption from judicial process extends to the property of the United States, and for the same reasons. As justly observed by the learned judge who tried this case, there is no distinction between suits against the government directly and suits against its property."

The case of *The Siren* was decided in accordance with the doctrine, that,

"Although direct suits cannot be maintained against the United States, or against their property, yet when the United States institute a suit, they waive their exemption so far as to allow a presentation by the defendant of set-off, legal and equi-table, to the extent of the demand made or property claimed, and when they proceed *in rem,* they open to consideration all claims and equities in regard to the property libelled."

The United States, in answer to the libel, here excepted to the jurisdiction of the District Court over the cargo of cotton, because it was the property of the United States, and could not be made subject to process in that court, nor

---

* 7 Wallace, 154.

to the compulsory exaction of salvage therefrom, by the process or decree of that court, and that exception and claim in this suit the United States have never abandoned.

The cases on this question are all collected in the opinion of the Supreme Court of Massachusetts, in *Briggs et al.* v. *Light Boats*,* and they show by a decisive weight of authority that, in the absence of any statute permitting it, the property of the United States is not liable to judicial process *in rem.*

*Messrs. Donohue, Beebe, Cooke, and Flagg, contra.*

Mr. Justice MILLER delivered the opinion of the court.

Two questions are raised by the record in this case, both of which are of importance.

The first is whether personal property of the United States on board a vessel for transportation from one point to another, is subject to a lien for salvage services rendered in saving the property.

The second is, under what circumstances, if any, can the lien be enforced, if one exists.

Of the first proposition there does not seem to be any reasonable doubt, upon a view of the authorities. *Brown* v. *Stapyleton*,† *The Marquis of Huntley*,‡ *The Lord Nelson*,§ *The United States* v. *Wilder*,‖ *The Siren*,¶ are all cases in which maritime liens are recognized and enforced against the property of the supreme government, the liens having their inception while the ownership of the property was in the government. The case of *Briggs* v. *The Light Boats*,** is a case in which a lien is recognized on property of the United States, created before the title and possession passed to the United States, but in which it was finally held, by the Supreme Court of Massachusetts, that it could not be enforced because the United States could not be sued in a personal action, and their possession could not be disturbed by a suit *in*

---

* 11 Allen, 158.          † 4 Bingham, 119.          ‡ 3 Haggard, 246.
§ Edward's Admiralty, 79.   ‖ 3 Sumner, 308.          ¶ 7 Wallace, 152.
** 7 Allen, 287; S. C., 11 Id. 157.

*rem.* The proposition is treated by the modern text-writers as settled.* We are quite satisfied with the reasons on which the principle rests, and are of opinion that when the property of the government has been saved from destruction by salvors, or by those sacrifices which are compensated by a contribution in general average, justice and sound policy require that it should be held to bear its share of the burden which the unanimous voice of maritime nations imposes on all other property in like condition.

The second of the questions above stated presents the more difficult problem.

Perhaps the two most authoritative and well-considered cases on that subject are *The Siren,*† and *Briggs* v. *The Light Boats.*‡ Both these cases assert the doctrine, after a full review of the authorities, that such a lien cannot be enforced where, in order to do this successfully, it is necessary to bring a suit against the United States, because the doctrine is well established that no suit can be sustained in which the United States is made an original defendant, to be brought into court by process, without some act of Congress expressly authorizing it to be done.

They also both assert the proposition that no suit *in rem* can be maintained against the property of the United States when it would be necessary to take such property out of the possession of the government by any writ or process of the court.

There are some expressions in the opinion of this court in the case of *The Siren*, which seem to imply that no suit *in rem* can be instituted against property of the United States under any circumstances. But a critical examination of the case and the reasoning of the court, will show that that question was not involved in the suit; and that it was not intended to assert such a proposition without qualification. In that case a prize, after capture and before condemnation,

---

* See Marvin on Wreck and Salvage, § 122; 1 Parsons, Maritime Law, 324; 2 Ibid. 625.

† 7 Wallace, 152.    ‡ 11 Allen, 157.

had collided with another vessel and was in fault, and it was held that as the government had brought the prize into the court for condemnation, and was before the court as plaintiff, and had placed the *res* in possession of the court, the lien for the damages growing out of the collision could be enforced against the United States. It was not, therefore, necessary to define all the circumstances under which the court, having control of the *res*, might enforce a lien on property of the United States; and the learned judge who delivered the opinion cites with approval the case of *The Light Boats*, in 11 Allen, in which the doctrine is laid down and well supported that proceedings *in rem* to enforce a lien against property of the United States are only forbidden in cases where, in order to sustain the proceeding, the possession of the United States must be invaded under process of the court. With the principle as thus stated we agree, and do not see in it anything inconsistent with the case of *The Siren.*

In the English courts, when it is made to appear that property of the government ought, in justice, to contribute to a general average, or to salvage, it seems to be the usual course of proceeding for the proper officer of the government to consent in court that it may take jurisdiction of the matter. This consent is given by the authority of the king, who thus submits to be sued in his own courts. The liberal exercise of this authority removes the difficulty presented here, where no power to do this exists in any officer of the government, and prevents any apprehension of gross injustice in such cases in England.*

We are therefore compelled to inquire into the special circumstances of this case to ascertain whether the cotton, which was the subject of salvage, can be brought within the jurisdiction of the court without violating the principle we have stated. In doing this the absence of any such power to submit the case to the jurisdiction of the court, as that exercised in England, seems to justify a liberal construction

---

* Marquis of Huntley, 3 Haggard, 246.

of the rule on which we are to act, in favor of the promotion of justice.    That rule, as we have already stated, recognizes the existence of the lien for salvage, and admits that the lien can only be enforced by the courts in a proceeding which does not need a process against the United States, and which does not require that the property shall be taken out of the possession of the United States.    But what shall constitute a possession which, in reference to this matter, protects the goods from the process of the court?    The possession which would do this must be an actual possession, and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication.    We are speaking now of a possession which can only be changed under process of the court by bringing the officer of the court into collision with the officer of the government, if the latter should choose to resist. The possession of the government can only exist through some of its officers, using that phrase in the sense of any person charged on behalf of the government with the control of the property, coupled with its actual possession. This, we think, is a sufficiently liberal definition of the possession of property by the government to prevent any unseemly conflict between the court and the other departments of the government, and which is consistent with the principle which exempts the government from suit and its possession from disturbance by virtue of judicial process.

Bringing the facts of the case before us to the test of these principles, the case was the usual one of a common carrier contracting to deliver goods on his own responsibility, and not the case, as alleged by the United States, of a charter of the vessel.    The goods were then delivered to the master, and he contracted to deliver them to the agent of the United States in New York.    Immediately on her arrival, and before any of the cotton was delivered to the agent, the vessel and cargo were libelled and taken possession of by the marshal under the writ which issued on the libel being filed. The possession of the master of the vessel was not the possession of the United States.    He was in no sense an officer

of the government. He was acting for himself, under a contract which placed the property in his possession and exclusive control for the voyage. His obligation was to deliver possession in New York to the agent of the government. This he had not done when the process was served on the cotton. The marshal served his writ and obtained possession without interfering with that of any officer or agent of the government. The United States, without any violation of law by the marshal, was reduced to the necessity of becoming claimant and actor in the court to assert her claim to the cotton. Under these circumstances we think it was the duty of the court to enforce the lien of the libellants for the salvage before it restored the cotton to the custody of the officers of the government.

DECREE AFFIRMED.