CHARLES F. OBRECHT, trading as Charles F. Obrecht Company,

*vs.*

WILSON M. VINYARD, AND OTHERS,

THE HENRY A. KRIES & SONS COMPANY, AND OTHERS,

*vs.*

Charles F. Obrecht, trading as Charles F. Obrecht Company.

*New Castle, June* 14, 1921.

Where a federal court, after permitting the recording of liens on two naval tugs being constructed allowed the United States to take and remove them from its jurisdiction without notice to the lienors, its failure to protect the liens was not a denial of the lienor's right to pursue their remedies against the vessels elsewhere, so that to grant such rights in the state to which the vessels were removed would not be reviewing an order of the federal court.

Where a federal court, after permitting the recording of liens on two naval tugs being constructed, allowed the United States to take and remove them from its jurisdiction without notice to the lienors and without protecting the liens, the latter could be enforced in the state to which the vessels were removed as against the possession of the United States; there being no agreement between the latter and the builders transferring title by partial payments nor any contract provisoin giving to the United States any prior remedies over the lienors.

The builder of a vessel is not deprived of his property therein by payments made as the work progresses, unless it be so agreed in the contract.

The federal statute permitting suits against the United States does not apply to a suit in a state court.

A lien against a vessel being built for the United States can be enforced in the court of a state wherein the vessel is found while it is still in the posses-sion of the builder and before it has become the property of the United States.

Where, prior to the completion of and payment for two naval tugs being built for the United States, a federal court, after permitting materialmen's liens to be recorded, ordered the tugs delivered to the United States, without notice to the lienors, there was no transfer of title from the builder, and the United States took possession subject to the liens.

Where two naval tugs being constructed for the United States were taken from the possession of the builder prior to their completion and placed in the custody and control of another builder for completion, the holders of liens against the vessels while in the possession of the original builder, could en-force them while the vessels were in the possession of the second builder; the the process being served without bringing the sheriff into collision with any officer of the United States or with any person using the vessels in the service of the government.

BILL TO ENFORCE LIENS.     The bill seeks to enforce against two vessels liens acquired under the Statute of Maryland by those who furnished material and labor for the construction of the ves-sels.

By the allegations of the bill it appears that the complainant, Obrecht, in January, 1919, furnished materials which went into the construction of two Navy tugs being built by Eastern Shore Shipbuilding Company in its shipyard in Sharptown, Wicomico County, Maryland.    These materials were furnished on the credit of the company and the vessels, and had not been paid for.    After-wards the District Court of the United States for the District of Maryland on March 18, 1919, appointed temporary receivers of the shipbuilding company, and they took possession of its property, including the vessels.    On April 11, 1919, the United States Court gave the complainant leave to file in the Maryland court his claims for liens against the vessels for the materials without pre-judice, however, to the rights of any parties to that case to dis-pute the validity of such claims and the amounts due the com-plainant; and on April 17 these claims were so filed and recorded, the vessels being then at the shipyard.    Under the laws of Mary-land, which were set out in the bill, the claims became, were and still are liens against the vessels.    In May, 1919, the shipbuilding company was declared bankrupt by the District Court of the

United States for the Southern District of New York, and a trustee in bankruptcy appointed.

The vessels at the time of filing the bill in this cause were in the possession of Wilson M. Vinyard, at Milford, Sussex County, Delaware, where they are being completed by him.

On October 4, 1919, the complainant filed the bill in this Court setting out the above facts, making as defendants (1) Vinyard, (2) the trustee in bankruptcy (having obtained authority of the District Court of the United States for the Southern District of New York to make him a party defendant) and (3) nine other persons and corporations who had filed in the Maryland state court claims for liens against the two vessels. By the bill the complainant prayed this court to determine and enforce his lien by sale of the vessels, bring in other claimants, enjoin Vinyard from parting with possession of the vessels, or permitting the removal thereof.

Thereupon a restraining order was issued, and later a receiver was appointed by this Court to take possession of said two vessels. By permission the several lienors for materials who were made defendants filed cross bills in this court.

On November 12, 1919, leave was given by this Court to file in this cause a stipulation by the United States Attorney for the District of Delaware, by authority of the Secretary of the Treasury and the solicitor of the Treasury of the United States, for the discharge of the vessels, claiming for the United States ownership thereof and an interest therein. This stipulation was filed pursuant to sections 3753 and 3754 of the Revised Statutes of the United States (Comp. St. §§ 6950, 6951). Thereupon on November 12, 1919, the vessels were by order of this Court discharged from the possession of the receiver and delivered to the United States.

By amendments to the bill made April 17, 1920, it was alleged by the complainant, Obrecht, that in the petition filed by the United States in the Federal Court in Maryland, it was averred that the Eastern Shore Shipbuilding Company had agreed with the United States on June 5, 1918, to supply labor and materials to construct the hulls, and the United States supply certain other equipment, the price to be paid to the Eastern Shore

Shipbuilding Company being a lump sum; that the company had ceased to work on and refused to complete the vessels; that the United States wanted to remove the unfinished vessels to have them completed. Also that the effect of that contract was that the title to the vessels from the beginning was and continued to be, and at the filing of the bill was still in the Eastern Shore Shipbuilding Company, or its receiver, or trustee, subject to the liens of the complainant and other lienors.

Also that though the contract provided that certain equipment be furnished by the United States, they were of comparatively small value, were usually installed after the work of the shipbuilding company had been completed; that none of the equipment had been installed when the liens of the complainant and others accrued, filed and recorded; and that the articles were readily removable from the vessels after installment. Also that the work of the complainant and other lienors was done, the claims filed and recorded, and their rights and liens accrued before the petition of the United States to the Federal Court of Maryland was filed. Also that no notice of the filing of the petition of the United States was given, and the proceedings thereunder were *ex parte*. Therefore, it is alleged, the liens and rights of the complainant and other lienors had not been in any manner affected by the petition filed May 2, or by the order made thereon on May 5, and the complainant did not learn thereof until long after the making thereof and after the removal of the vessels to Milford. And further, that when the bill in this Court was filed the work of completing the vessels was being performed by Vinyard pursuant to a paper writing purporting to be a contract dated June 30, 1919; and further, that nothing had been done to divest, or otherwise affect, the rights or liens of the complainant and other lienors.

On March 28, 1921, the United States District Attorney filed in this cause a plea of the United States to the jurisdiction of this court to hear and determine the issues presented by and to grant the relief prayed for in the bill as amended and the cross bills as amended.

By the plea it is alleged that on June 5, 1918, a contract was made between the Eastern Shore Shipbuilding Company and the

United States to build the two vessels, a copy of the contract being set forth in the stipulation, and work was done thereunder, the builder being paid in accordance with the contract; that afterwards the receiver appointed by the United States District Court of Maryland took possession of the vessels as alleged by Obrecht's bill, and that Obrecht and the other material men were given leave to file their claims in the Maryland court; that on May 5, 1919, the District Court of the United States for the District of Maryland, on petition of the United States ordered the Maryland receiver to deliver to the United States the two vessels, and that this was done; and that thereafter the United States, having possession of the vessels, brought them to Vinyard to be by him completed. It is further asserted that as the District Court of the United States for the District of Maryland had jurisdiction of the vessels and of the claimants, Obrecht and the other lienors, its decree delivering the vessels to the United States cannot be reviewed by this Court. Also that if the liens were not discharged by the decree of the Federal Court in Maryland, such liens cannot be enforced against the possession of the United States, and that the Delaware court is without jurisdiction.

The plea has been set down by the complainant for a hearing as to its sufficiency in law, the well pleaded allegations of the bill being taken to be true for the purposes of trying the plea, and has been argued.

The stipulation is conditioned that if a final judgment is given in the court of last resort affirming the claims and the rights of any persons asserting the same to enforce such claims against the property by the proceedings taken, notwithstanding the claims of the United States thereto, the final judgment shall be deemed a determination of the rights of the claimants as if the possession had not been changed, without conceding these rights or waiving any objection to any of the proceedings. All the rights of the claimants are expressly reserved and protected.

It is alleged by the complainants in the original and cross bills that they had no notice of the order of the Federal Court in Maryland authorizing the removal of the vessels from the possession of the Maryland receiver.

· *Herbert H. Ward*, and with him *Horace T. Smith*, *of* Baltimore, Md., for complainant in the original bill and cross-complainants.

*James H. Hughes, Jr.*, U. S. District Attorney, for the United States.

THE CHANCELLOR. The first question discussed by the United States District Attorney was whether the order of the District Court of the United States for the District of Maryland ordering that the two vessels be delivered to the United States can be reviewed in this Court, the complainant and other lienors having alleged that they had no notice or knowledge of the order, or of an application therefor, until long after the order had been made and the vessels removed to Delaware, and therefore that the order was entirely *ex parte.* The theory of the United States Attorney is that the order cannot be attacked collaterally, and that the complainants and other lienors here are concluded thereby. Assuming that they could not attack here the power, or even the right of the Federal Court to make that order, the simple answer to his contention is that they are not doing so here. No decision has heretofore been made anywhere as to the rights of the lienors to have and enforce their rights as against the vessels and as against any claim of the United States. They were given leave to file their claims in the Maryland state courts, and no right was given to the United States to contest them. They filed and recorded their liens, and, as alleged, acquired valid liens on the vessels, and whether any claim or interest of the United States in the vessels was subject thereto, or burdened therewith, was not there determined. All that happened was that the Federal Court in Maryland, after permitting the liens on the vessels to be filed and recorded, allowed the United States to take the vessels and remove them from its territorial jurisdiction without notice to the lienors, and without protecting in any way the liens, as might have been done. The fact that this was so done could not be construed as a denial of the right of the lienors to pursue their remedies against the vessels elsewhere, and to think otherwise would be to impugn the fairness of that Court. If, therefore, the lienors have a right to follow the vessels here and in this Court enforce their liens, there is no adjudication denying that right,

and to grant such right in this cause here would not be reviewing any order of the Federal Court in Maryland.

The second question discussed was, as stated by the United States District Attorney, whether the liens claimed by the complainants, if any were acquired, could be enforced against the possession of the United States. It was not questioned that the complainants and other lienors who have intervened and filed cross bills were entitled to liens under the laws of Maryland, and by filing and recording them did actually acquire in Maryland liens against the two vessels.

It is asserted by the lienors, and there is no contention to the contrary, that the State court and not the Federal Court was the proper forum in which to enforce the liens created by the State statute for materials furnished in the construction of a vessel, it not being an admiralty case. *The Winnebago*, 205 *U. S.* 354, 27 *Sup. Ct.* 509, 51 *L. Ed.* 836.

It was contended by the complainants, without the contrary being urged or shown, that a boat lien created by one State may be enforced by the courts in another State where the vessel is found, and that the removal of the vessel from the original jurisdiction did not defeat the lien. This was so decided in *American Trust Co. v. W. & A. Fletcher, etc., Co.*, 173 *Fed.* 471, 97 *C. C. A.* 477, in which the lien for building a vessel given by the statute of New Jersey, where the vessel was built, was enforced in Maine. But without deciding these questions, which are really not raised by the plea, the real question to be decided is whether the lienors can now enforce their claims against the vessels.

Beyond question the liens of the complainant and others could have been enforced against the vessels prior to the delivery of possession thereof to the United States by the United States Court in Maryland. It is not necessary to go outside the case of *U. S. v. Ansonia, etc., Co.*, 218 *U. S.* 452, 31 *Sup. Ct.* 49, 54 *L. Ed.* 1107, for authority to decide this branch of the case. In that case the Trigg Company had contracted with the United States to build three vessels, Benyuard, Mohawk and Galveston, for lump sums for each vessel. While the vessels were still under construction a bill was filed by creditors asserting liens for supplies

under the Virginia statute, a receiver was appointed for the Trigg Company on account of its insolvency and the receiver took possession of the vessels. A stipulation was then filed by the United States under the same statute as here, and the vessels were taken from the possession of the Virginia receiver. The question was whether the liens under the Virginia statute were superior to any claim or lien of the United States. It was held as to the Benyuard that the title thereto passed to the United States because the agreement with the builder provided that the parts as paid for should become the sole property of the United States, and thereby the builder was divested of any title to or in the vessel; and, therefore, the liens under the State law could not fasten on the vessel as property of the United States.

"The Benyuard, as fast as constructed, became one of the instrumentalities of the Government, intended for public use, and could not be seized under State laws to answer the claim of a private person, however meritorious."

But the contrary was held as to the other two vessels because the contracts contained no such provision as to the passing of title on partial payments in the progress of the work, as was found in the contract for building the Benyuard. Furthermore, in the contract as to the Mohawk a lien was reserved to the United States for all moneys advanced on account of construction, and this provision was inserted pursuant to a joint resolution of Congress authorizing it in all such contracts. It was held to be a contract and not a statutory lien and gave the United States no rights as to the vessel superior to that of the lienors under the Virginia statute. The same principles were applied to the third vessel, the Galveston, as to which there was no provision for taking title, though it was provided that on certain conditions the title should vest in the United States as collateral security. In this cited case, then, the distinction is sharply drawn between the effect of contracts wherein it was agreed that title to the vessel should pass from the builder prior to the completion of the vessel. The Court made the question of the title of the United States the pivotal consideration, and in effect held that if at the time the right of the material men to a lien on a vessel accrued, the title to the vessel, or to any materials which went into the construction thereof, was in the United States pursuant to a contract with

the builder, the liens given by a state statute to such material men could not validly attach; otherwise they could.

The case of *Briggs v. A Light Boat,* 11 *Allen (Mass.)* 157, relied on by the United States District Attorney, is probably not inconsistent with the *Ansonia Case,* for the Court there distinctly said:

"When these suits were begun, the vessels, though the petitioners had an interest in them by way of lien, were the lawful property of the United States, and in their possession."

In that case, therefore, title as well as possession was in the United States. If on the other hand there be an inconsistency between the cases, the decision of the Supreme Court of the United States should be and is given greater weight than that of the State court in determining the right of the United States.

In the case in this Court there was no agreement transferring title by partial payments, and there is no feature of the contract which gives to the United States any greater rights or prior or superior remedies over the material men than those given them by the Maryland statute. In further support of this position the general principle is that the builder of a vessel is not deprived of his property therein by payments made as the work progresses, unless it be so agreed upon in the contract. This was decided by the Court of Errors and Appeals of Delaware in *Hall v. Green,* 1 *Houst.* 546, 71 *Am. Dec.* 96.

It is urgently insisted by the United States District Attorney, however, that the liens of the complainants and other intervenors, if they have acquired any, could not be enforced against the possession of the United States, and he quite frankly urges that they may have a right, but no remedy. A sovereign cannot be sued without its consent, and the Federal statute permitting such suits does not apply to a suit in the State court. But there is no general principle that a lien established against a vessel being built for the United States cannot while it is still in the possession of the builder for completion, and before it had become the property of the United States, be enforced against the vessel in the court of a state wherein the vessel is found, and no case so holding has been cited or found. The case most relied on, *Briggs v. A Light Boat,* 11 *Allen (Mass.)* 157, does not so hold, and was a

different case. There the United States was a defendant, the title to the vessels had vested in the United States, and possession of the vessels had been taken by the United States for use for the purposes for which they were built. The decision was based on the title and possession which the United States had to the vessels, and under such circumstances the lienor was denied a right to enforce his lien when to do so would necessarily under the laws of Massachusetts bring in the United States as a party defendant by notice deemed equivalent in legal effect to a process. This case decides, according to the court in *The Davis*, 10 *Wall.* 15, 19 *L. Ed.* 875, also cited as *U. S. v. Douglas*, that proceedings *in rem* to enforce a lien against property of the United States are only forbidden in cases where in order to sustain the proceedings the possession of the United States must be invaded under process of the court.

None of these features, prominent in *Briggs v. A Light Boat*, 11 *Allen (Mass.)* 157, are present in the case under consideration. The title to the two tug boats was not in the United States, but in the Maryland builder, or its receiver, or trustee in bankruptcy, and they were all made parties defendant. No transfer of title, which clearly was originally in the Maryland builder, was made by the District Court of the United States for the District of Maryland, for that Court simply delivered to the United States possession of the incompleted boats, and the property therein must have remained in the builder and passed to its trustee in bankruptcy. The United States received from the Maryland court nothing more than possession of the vessels, and took that possession as it would have taken title if it had been awarded, namely, subject to the liens. Furthermore, there is no indication of an intention of the Maryland court to affect these liens, and to suggest such an intention is to charge that court with having deprived the lienors of rights which they had then acquired with the knowledge and by authority of that court against the vessels, even as against the United States.

At the time the bill in this case was filed the vessels were surely in the custody and control of Vinyard, not as an officer, servant or agent of the United States, but as a builder to complete their construction. This was a delivery to him of possession,

as well as control, and the process in this pending case was served without bringing the sheriff who served it into collision with any officer of the government, or with any person making use of the vessels in the service of the government.

A decision of the United States Supreme Court bearing directly on this principle and establishing it is *The Davis, supra.* There cotton belonging to the United States was put aboard a privately owned vessel to be transported from one port to another and delivered to an officer of the United States. A lien for salvage service rendered during the voyage was enforced, the physical as distinct from the constructive possession being in the Master of the vessel for the purpose of the voyage. After stating the rule that a lien, even for salvage, "can only be enforced by the courts in a proceeding which does not need a process against the United States, and which does not require that property shall be taken out of the possession of the United States," the Court at *page* 20 of 10 *Wall.* (19 *L. Ed.* 875) said:

"We are therefore compelled to inquire into the special circumstances of this case to ascertain whether the cotton, which was the subject of salvage, can be brought within the jurisdiction of the court without violating the principle we have stated. * * * But what shall constitute a possession which, in reference to this matter, protects the goods from the process of the court. The possession which would do this must be an actual possession and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication. We are speaking now of a possession which can only be changed under process of the court by bringing the officer of the court into collission with the officer of the Government, if the latter should choose to resist. The possession of the Government can only exist through some of its officers, using that phrase in the sense of any person charged on behalf of the Government with the control of the property, coupled with its actual possession. This, we think, is a sufficiently liberal definition of the possession of property by the Government to prevent any unseemly conflict between the court and the other departments of the Government, and which is consistent with the principle which exempts the Government from suit and its possession from disturbance by virtue of judicial process."

Applying these principles to the facts before it, the Court said:

"The possession of the master * * * was not the possession of the United States. He was in no sense an officer of the Government. He was acting for himself, under a contract which placed the property in his possession and exclusive control for the voyage."

Even if it be a salvage case, and therefore given special favor, this case is sufficient authority to sustain the jurisdiction of this Court, even though the United States had expended money on the vessels, which were still incomplete and not fit for the purpose for which they were being built, and had not in fact been used for such purpose. The possession of the United States was not invaded in a way deemed inconsistent with its sovereignty. The case in this Court cannot be distinguished from that above cited, and Vinyard so far as possession was concerned was in the same position as the master of the vessel.

Nothing in the contract made by Vinyard with the United States for completing the tug boats has been pointed out as showing that Vinyard's relation to the vessels was other than stated above. It is clear, then, that there is no invasion of the rights of the United States as sovereign by the taking possession of said vessels by the receiver appointed in this cause, and the plea will be overruled.