**Harry ZYCH, doing business as American Diving and Salvage Company, Plaintiff–Appellant,**

v.

**UNIDENTIFIED, WRECKED AND ABANDONED VESSEL, BELIEVED TO BE THE "SEABIRD", which sank in 1868, her engines, boilers, machinery, tackle, apparel, and cargo, located within five miles of a point at coordinates 42 degrees, 17 minutes north latitude, 87 degrees, 47 minutes west longitude, Defendant,**

and

**Illinois Historic Preservation Agency, Illinois Department of Transportation, and United States of America, Intervening Defendants–Appellees.**

No. 93–1426.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1993.

Decided March 21, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 22, 1994.

Paul N. Keller (argued), Park Ridge, IL, for Harry Zych.

James R. Carroll, Rosalyn B. Kaplan, Asst. Attys. Gen., Chicago, IL, for Unidentified, Wrecked and Abandoned Vessel, believed to be the "Seabird".

James R. Carroll, Rosalyn B. Kaplan, Asst. Attys. Gen., Richard Linden, Roland W. Burris, Office of Atty. Gen., Jennifer A. Keller, Asst. Atty. Gen. (argued), Civ. Appeals Div., Chicago, IL, for Illinois Historic Preservation Agency and Illinois Dept. of Transp.

Barbara B. O'Malley (argued), Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for U.S.

Elizabeth Sherrill Merritt, Thompson McCord Mayes, David A. Doheny, Alexandra E. Acosta, Nat. Trust for Historic Preservation in U.S., Washington, DC, for Nat. Trust for Historical Preservation in the U.S., Society of Professional Archaeologists, Society for Historical Archaeology, Advisory Council on Underwater Archaeology, Society for American Archeology, Council of American Maritime Museums, Ass'n for Great Lakes Maritime History, and The Landmark Preservation Council of Illinois, Inc., amici curiae.

Robert A. Butterworth, Eric J. Taylor, Office of Atty. Gen., Tallahassee, FL, for State of Fla., amicus curiae.

Jimmy Evens, Office of Atty. Gen., Montgomery, AL, for State of Ala., amicus curiae.

Charles M. Oberly, III, Office of Atty. Gen., Wilmington, DE, for State of Del., amicus curiae.

Michael J. Bowers, Office of Atty. Gen., Atlanta, GA, for State of Ga., amicus curiae.

Pamela Carter, Office of Atty. Gen., Federal Litigation, Indianapolis, IN, for State of Ind., amicus curiae.

Chris Gorman, Office of Atty. Gen., Com. of Ky., Frankfort, KY, for State of Ky., amicus curiae.

J. Joseph Curran, Jr., Office of Atty. Gen., Crownsville, MD, for State of Md., amicus curiae.

Frank J. Kelly, Office of Atty. Gen., Lansing, MI, for State of Mich., amicus curiae.

Fred DeVesa, Office of Atty. Gen., Trenton, NJ, for State of N.J., amicus curiae.

Robert Abrams, Office of Atty. Gen., New York City, for State of N.Y., amicus curiae.

Michael F. Easley, Office of Atty. Gen., Raleigh, NC, for State of N.C., amicus curiae.

Lee Fisher, Office of Atty. Gen., Columbus, OH, for State of Ohio, amicus curiae.

James E. O'Neil, Office of Atty. Gen., Providence, RI, for State of R.I., amicus curiae.

T. Travis Medlock, Office of Atty. Gen., Columbia, SC, for State of S.C., amicus curiae.

Dan Morales, Office of Atty. Gen., Austin, TX, for State of Tex., amicus curiae.

Jeffrey L. Amestoy, Office of Atty. Gen., Montpelier, VT, for State of Vt., amicus curiae.

Stephen D. Rosenthal, Office of Atty. Gen., Com. of Va., Richmond, VA, for State of Va., amicus curiae.

James E. Doyle, Atty. Gen., Office of Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for State of Wis., amicus curiae.

Malaetasi Togafau, Office of Atty. Gen., Territory of American Samoa, Pago Page, AS, for Territory of American Samoa, amicus curiae.

Rosalie Ballentine, Office of Atty. Gen., Territory of the Virgin Islands, St. Thomas, VI, for Territory of the Virgin Islands, amicus curiae.

Elizabeth Barrett–Anderson, Atty. Gen., Office of Atty. Gen., Territory of Guam, Agana, GU, for Territory of Guam, amicus curiae.

Robert C. Naraja, Atty. Gen., Territory of Northern Mariana Islands, Mariana Island, Saipan, MP, for Territory of Northern Mariana Islands, amicus curiae.

James K. Pharris, Michael S. Grossman, Office of Atty. Gen. of Wash., Olympia, WA, for State of Wash., amicus curiae.

Before BAUER, FRIEDMAN,* and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Harry Zych filed this *in rem* action to obtain title to an abandoned shipwreck, the *Seabird*, or, alternatively, a salvage award. The case was presented to the district court and that court dismissed Zych's case for want of jurisdiction. We reversed and remanded the case to the district court. The district court dismissed the case a second time. Zych appeals the second dismissal of his case. He now seeks only a salvage award against the State of Illinois.

The Abandoned Shipwrecks Act of 1987, 43 U.S.C. §§ 2101–06 ("ASA"), declares in part that the law of salvage shall not apply to abandoned shipwrecks, like the *Seabird*, that are embedded in the submerged lands of the states. Zych contends that this aspect of the ASA violates the Constitution.

I.

This case begins with a fateful trip, that started from a midwestern port aboard a not so tiny ship. At 7:00 p.m. on April 8, 1868 in Manitowoc, Wisconsin, one hundred passengers boarded the *Seabird* and set sail for what everyone expected would be a short tour down the icy waters of Lake Michigan to Chicago. Everything went well until 6:00 a.m. the next day, when the ship was off the coast of Waukegan, Illinois, just north of Chicago. The night had been cold, the weather rough, and the ship's crew had kept the large stove in the main cabin going all night to heat the ship. As daylight came, the porter, a mighty sailor man in his own right, cleaned the fire in the stove, stepped to the rail, and threw the still hot ashes over the side. Unfortunately, the porter emptied the container of ashes into the wind and the wind blew the ashes back into the *Seabird*. The ashes started a fire and the ship was sunk. Even the courage of the fearless crew, led by the brave and sure Captain John Morris, could not save the *Seabird*. All but two persons aboard the *Seabird* perished. The ship set ground on the bottom of Lake Michigan, where it rested at some unknown and undiscovered place for one hundred and twenty-one years, when Harry Zych located her.

Zych, who operates a commercial salvage business, filed this admiralty action *in rem* to obtain either title to the *Seabird* or a salvage award. Zych sought relief against all claim-

---

* The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

ants and all the world. The Illinois Department of Transportation ("IDOT") and the Illinois Historic Preservation Agency ("IHPA") intervened on behalf of the State of Illinois. The State asserted title to the *Seabird* pursuant to the ASA and also claimed that the Eleventh Amendment barred Zych's suit. Zych responded by challenging the constitutionality of the ASA. That challenge brought the United States into the case to defend the statute's constitutionality. The district court dismissed Zych's complaint because it found that his admiralty action constituted an action against the State of Illinois in violation of the Eleventh Amendment. *Zych v. Unidentified, Wrecked and Abandoned Vessel*, 746 F.Supp. 1334, 1350–52 (N.D.Ill.1990). Zych appealed and we reversed. *Zych v. Unidentified, Wrecked and Abandoned Vessel*, 941 F.2d 525 (7th Cir. 1991) ("*Zych I* "). We remanded the case to the district court with instructions to find whether the *Seabird* is embedded in the submerged lands of Illinois and, if so, whether the ASA is constitutional so as to permit its application to this case. On remand to the district court, Zych admitted that the *Seabird* is embedded for purposes of the ASA. The district court held that the *Seabird* is embedded, that the ASA applies, and that nothing about the ASA violates the Constitution. *Zych v. Unidentified, Wrecked and Abandoned Vessel*, 811 F.Supp. 1300 (N.D.Ill. 1992). The district court therefore dismissed Zych's case.

## II.

In this appeal, Zych repeats his contention that the ASA is unconstitutional. Zych has abandoned that part of his original claim that sought title to the *Seabird*. Instead, Zych now admits that Illinois is the owner of the *Seabird* pursuant to the law of finds. *See infra* note 2. He argues that the law of salvage should be applied to require Illinois to pay him a salvage award for his efforts to salve the *Seabird*. Zych contends that the ASA violates the Constitution when it declares that the law of salvage shall not apply to abandoned shipwrecks that are embedded in the submerged lands of the states. 43 U.S.C. §§ 2105, 2106(a).

■ The Constitution provides that "[t]he judicial Power shall extend ... to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. This provision presupposes the existence in the United States of a general body of admiralty and maritime law prior to the Constitution. *Panama R.R. v. Johnson*, 264 U.S. 375, 385, 44 S.Ct. 391, 393, 68 L.Ed. 748 (1924). The purpose of Article III's admiralty and maritime jurisdictional grant was to place the admiralty and maritime law under national control because of its intimate relation to navigation and to interstate and foreign commerce. *Id.* at 386, 44 S.Ct. at 393.

■ The Constitution does not define the precise limits of admiralty and maritime jurisdiction, nor does it draw any obvious boundary between federal and local law. *Detroit Trust Co. v. The Barlum*, 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934); *The Lottawanna*, 88 U.S. (21 Wall.) 558, 574, 22 L.Ed. 654 (1875). Instead, the Constitution creates a highly intricate interplay between the state and national governments in their regulation of admiralty and maritime commerce and activities. *Romero v. International Term Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 480, 3 L.Ed.2d 368 (1959); *The Steamer St. Lawrence*, 66 U.S. (1 Black) 522, 527, 17 L.Ed. 180 (1861). The states have a wide scope in this context, but their laws must, of course, yield to the needs of a uniform federal system. *American Dredging Co. v. Miller*, —— U.S. ——, —— – ——, 114 S.Ct. 981, 987–88, 127 L.Ed.2d 285 (U.S.1994); *Romero*, 358 U.S. at 373, 79 S.Ct. at 480.

■ Article III's admiralty and maritime provision contains three implied grants of power. First, it empowers Congress to confer admiralty and maritime jurisdiction on the lower federal courts. *Id.* at 360, 79 S.Ct. at 473. Second, Article III authorizes the federal courts to draw on the substantive law inherent in the admiralty and maritime jurisdiction. *Id.* Finally, Article III grants Congress the power to revise and supplement the maritime law within the limits of the Constitution. *Id.* Zych contends that Congress exceeded its authority under this last grant of power when, in the ASA, it declared that

the law of salvage shall not apply to shipwrecks like the *Seabird.*

■ Congress can alter, qualify, or supplement admiralty law as it sees fit in the exercise of its wide discretion. *O'Donnell v. Great Lakes Dredge & Dry Dock Co.,* 318 U.S. 36, 40, 63 S.Ct. 488, 491, 87 L.Ed. 596 (1943); *Panama R.R.,* 264 U.S. at 386, 44 S.Ct. at 393. Congress' power in this regard is paramount and the Supreme Court has sustained numerous legislative enactments by the Congress. *See, e.g., Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (upholding application of the Death on the High Seas Act, 46 U.S.C. §§ 761 *et seq.*); *O'Donnell,* 318 U.S. at 39–41, 63 S.Ct. at 490–91 (upholding the Jones Act, 46 U.S.C. § 688); *Detroit Trust Co.,* 293 U.S. at 44–45, 55 S.Ct. at 38–39 (listing several legitimate exercises of congressional power to alter, qualify, or supplement admiralty and maritime law from 1789–1927).

■ The Supreme Court has established two constitutional limits on Congress' ability to legislate in the admiralty and maritime context. First, Congress can neither exclude a thing that falls clearly within the admiralty and maritime law nor can it include a thing that clearly falls without. *Panama R.R.,* 264 U.S. at 386, 44 S.Ct. at 393. Second, congressional statutes must be coextensive with and operate uniformly in the whole of the United States. *Id.*

In *Zych I,* we held that the ASA did not conflict with the second limitation, the uniformity principle. We left unanswered whether the ASA, as applied here, conflicts with the first limitation—that is, whether the ASA excludes a thing that falls clearly within the admiralty and maritime law. Zych argues that the thing unconstitutionally excluded here by the ASA is the law of salvage.

Congress passed the ASA to clear up any confusion over who owns certain abandoned shipwrecks. *Zych I,* 941 F.2d at 528. As relevant to this case, the ASA applies to abandoned shipwrecks that are embedded in the submerged lands of the states. 43 U.S.C. §§ 2101, 2102 & 2105(a)(1). A shipwreck, for purposes of the ASA, includes "a vessel or wreck, its cargo, and other contents." 43 U.S.C. § 2102(d). Abandoned shipwrecks are those shipwrecks "which have been deserted and to which the owner has relinquished ownership rights with no retention." 43 U.S.C. § 2101(b). An abandoned shipwreck is embedded if it is "firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." 43 U.S.C. § 2102(a). "Submerged lands," such as the land beneath Lake Michigan where the *Seabird* currently sits, are "lands beneath navigable waters." 43 U.S.C. § 2102(f)(1).[1]

The ASA declares that the "United States asserts title to any abandoned shipwreck that is ... embedded in submerged lands of a State." 43 U.S.C. § 2105(a)(1). The ASA simultaneously transfers title to the abandoned shipwreck "to the State in or on whose submerged lands the shipwreck is located." 43 U.S.C. § 2105(c). The ASA also announces that "[t]he law of salvage ... shall not apply to abandoned shipwrecks to which section 2105 of this title applies." 43 U.S.C. § 2106(a).

1. The Submerged Lands Act of 1953, which section 2102(f)(1) incorporates, defines "lands beneath navigable waters" as including:

(1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction; [and]

(2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary as it existed at the time such State became a member of the Union, or as heretofore approved by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles.

43 U.S.C. § 1301(a). The land beneath Lake Michigan where the *Seabird* is located easily falls within this definition.

Zych contends that the law of salvage falls clearly within the admiralty and maritime law and that the ASA therefore violates the Constitution.

Zych concedes that the law of finds provides the State of Illinois with title to the *Seabird*.[2] He argues that the law of salvage and *The Davis*, 77 U.S. (10 Wall.) 15, 19 L.Ed. 875 (1869), require Illinois to pay him a salvage award for his efforts to salve the *Seabird*. It is a clever argument.

■ Salvage is a reward given to persons who save or rescue a ship or a ship's goods from shipwreck, fire, or capture. *Cope v. Vallette Dry Dock Co.*, 119 U.S. 625, 628, 7 S.Ct. 336, 337, 30 L.Ed. 501 (1887); *The "Sabine"*, 101 U.S. (11 Otto) 384, 25 L.Ed. 982 (1880). Three elements are necessary to a valid salvage claim: (1) marine peril; (2) voluntary service rendered outside the context of an existing duty or contract; and (3) success by the salvor such that the salvors' efforts at least contributed to saving the salvaged property. *Id.* at (11 Otto) 384; *Klein v. Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F.2d 1511, 1515 (11th Cir.1985). If a salvor satisfies these elements, a court may order the owner of the vessel to pay the salvor some amount of money, which would be the salvage award.

■ The language of section 2106(a) says that the law of salvage shall no longer apply to abandoned shipwrecks. In fact, in a remarkable twist, this provision of the ASA has no effect on the law of salvage because the law of salvage does not apply to abandoned shipwrecks. *Columbus–America Discovery v. Atlantic Mut. Ins.*, 974 F.2d 450, 459 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993); *Chance v. Certain Artifacts Found and Salvaged*, 606 F.Supp. 801, 804 (S.D.Ga.1984), *aff'd by unpublished decision*, 775 F.2d 302 (11th Cir.1985). The law of salvage assumes that the salvaged property is owned by someone other than the salvor. *Hener v. United States*, 525 F.Supp. 350, 356 (S.D.N.Y.1981). There must be some owner—here, apparently Illinois—that the salvor can obtain a salvage award from. Otherwise, the property is abandoned and the law of finds applies. The ASA, by its terms, only applies to *abandoned* property—specifically, certain abandoned shipwrecks.

Zych, the ASA, and the law of finds all agree that Illinois owns the *Seabird*. Zych's suit is really a suit against Illinois because Zych seeks a salvage award from Illinois. As such, his suit implicates the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that the Eleventh Amendment prohibits suits, including suits in admiralty, by a citizen of a state against any state, including the citizen's own state, without the state's consent or unless Congress abrogates a state's sovereign immunity. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985); *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 & n. 17, 102 S.Ct. 3304, 3313 n. 17, 73 L.Ed.2d 1057 (1982); *Ex Parte State of New York, No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

In this case, Illinois has not consented to Zych's suit and Congress has not expressed any intent to abrogate Illinois' Eleventh Amendment sovereign immunity. The suit is therefore barred. *See Zych v. Wrecked Vessel Believed to be the "Lady Elgin"*, 960 F.2d 665, 670 (7th Cir.) (Eleventh Amendment

---

2. The law of finds, in simple terms, is the old rule of finders-keepers, losers-weepers. *Columbus–America Discovery Group v. Atlantic Mut. Ins.*, 974 F.2d 450, 459 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). Typically, the finder of the abandoned property acquires title to it. But, the law of finds contains an exception to this general rule. When the abandoned property is embed-

ded in the land, it belongs to the owner of the land. *Klein v. Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F.2d 1511, 1514 (11th Cir.1985). Illinois owns its submerged lands, *see* 43 U.S.C. § 1311, and the embeddedness exception to the law of finds suggests that Illinois also owns those things, liked the *Seabird*, that are embedded in its submerged lands.

prevents a federal district court from declaring that a finder of a shipwreck has rights superior to those of a state that claimed an interest in a wreck), *cert. denied*, —— U.S. ——, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992); *Sindia Expedition v. Wrecked & Abandoned Vessel*, 895 F.2d 116, 119 (3d Cir.1990) (same); *Fitzgerald v. Unidentified Wrecked and Abandoned Vessel*, 866 F.2d 16, 17–19 (1st Cir.1989) (same).

Undeterred by the Eleventh Amendment, Zych points to the Supreme Court's decision in *The Davis*, 77 U.S. (10 Wall.) 15, 19 L.Ed. 875 (1870). In that case, a treasury agent of the United States shipped cotton on a schooner, the *Davis*, from Savannah, Georgia to New York. The ship and her cargo were nearly lost on the voyage to New York, but were saved by one Douglas and other salvors. Douglas sued the United States for a salvage award. The Supreme Court held that "justice and sound policy" require that the federal government pay out salvage awards to salvors when its property has been saved from destruction. *Id.* (10 Wall) at 19.

*The Davis* is not Zych's case. If the property consisting of the *Seabird* and its accompanying cargo are owned by the State of Illinois, the Eleventh Amendment prohibits us from adjudicating Zych's salvage claim, as we have explained. *The Davis* involved salvaged federal property in a claim against the federal government. Unlike Zych's case, *The Davis* did not involve salvaged state property where a salvor sought a salvage award from a state. That is the kind of property—i.e., state-owned property—described here by Zych and the ASA.

Zych argues that, by analogy, the exception to governmental sovereign immunity created by *The Davis*—in the context of *federal* sovereign immunity—applies to Eleventh Amendment state sovereign immunity. This argument is unpersuasive. To begin with, it ignores the express language of the Eleventh Amendment, which, by its words, indicates that the Eleventh Amendment applies only to suits "against one of the United States." U.S. Const. amend. XI. Zych attempts to overcome this obstacle by pointing to *Hans*. There, the Court held that the Eleventh Amendment encompasses state

sovereign immunity when a citizen of a state sues the citizen's own state. The Court in *Hans* was not constrained by the Eleventh Amendment's prohibition only of suits "against one of the United States by Citizens of another State, or by Citizens of any Foreign State." U.S. Const. amend. XI. But, though the words of the Eleventh Amendment may not suggest the result reached by the Court in *Hans*, that fact does not mean that the language of the Eleventh Amendment is irrelevant. To the contrary, the Eleventh Amendment is clear; it says nothing about federal sovereign immunity.

Moreover, state sovereign immunity is categorically different from federal sovereign immunity. Federal sovereign immunity is a common law doctrine that simply holds that the federal government cannot be sued without its consent. *FDIC v. Meyer*, —— U.S. ——, —— – ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). State sovereign immunity is a *constitutional* doctrine which rests on principles of federalism. As in *The Davis*, it is one thing for a federal court to order the federal government—of which the federal court is a part—to do something. It is quite another matter for a federal court to order a state—a separate sovereign—to pay something, like a salvage award, without the state's consent. As *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), points out, the Eleventh Amendment prohibits just this kind of invasion by the federal courts into the treasuries of the states. The Eleventh Amendment bars suits in federal court by private parties that seek to impose a liability which must be paid from the public funds of a state treasury. *Id.* Zych's suit asks us to do just that—to order the State of Illinois to dip into its treasury and pay him a salvage award. That we cannot do.

The exception to the common law doctrine of federal sovereign immunity alluded to in *The Davis* does not apply to the state sovereign immunity established by the Eleventh Amendment.

### III.

The Eleventh Amendment does not allow us to order Illinois to pay a salvage award to

Zych. The ASA then, as it affects this case, does not exclude a thing that clearly falls within the admiralty and maritime law. The Constitution is not violated, Zych's case is sunk, and the decision of the district court is

AFFIRMED.